**THURSTON HENSLEY**

v.

**CSX TRANSPORTATION, INC.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Aug. 6, 2009 Session.

Aug. 26, 2009.

Permission to Appeal Denied by Supreme Court March 1, 2010.

Gareth S. Aden and Christopher W. Cardwell, Nashville, Tennessee; Randall A. Jordan, Grant Buckley, Karen Jenkins Young and Christopher R. Jordan, St. Simons Island, Georgia; H. Dean Clements, Chattanooga, Tennessee; and Evan M. Tager, Dan Himmelfarb, and Theodore J. Weiman, Washington, D.C., for the appellant, CSX Transportation, Inc.

H. Douglas Nichol, Knoxville, Tennessee, and Joseph D. Satterley, Louisville, Kentucky, for the appellee, Thurston Hensley.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. McCLARTY, JJ., joined.

This case is back before us on remand from the United States Supreme Court "for further proceedings not inconsistent with [its] opinion" in *CSX Transportation, Inc. v. Hensley,* — U.S. —, 129 S.Ct. 2139, 173 L.Ed.2d 1184 (U.S.2009) (*Hensley II* ). The case was first before us in *Hensley v. CSX Transportation, Inc.,* 278 S.W.3d 282 (Tenn.Ct.App.2008) (*Hensley I* ). *Hensley I* was an appeal by CSX Transportation, Inc. ("Railroad"), of a judgment entered on a jury verdict in the amount of $5,000,000 in favor of Thurston Hensley ("Employee"). Employee sued pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (2008), to recover for asbestosis, a lung disease caused by his exposure to asbestos while working for Railroad some 30 plus years, and toxic encephalophathy, a brain illness caused by exposure to a solvent Employee used for many years. We affirmed the judgment in *Hensley I.* Of particular significance at this point is our holding in *Hensley I* that the trial court did not err in refusing to instruct the jury, as requested by Railroad, that Employee's fear of cancer must be "genuine and seri-

ous" to be compensable. *Hensley II* reversed our ruling, and held that "[t]he trial court should have given the substance of the requested instructions." 129 S.Ct. at 2142. Because there is a "reasonable probability" under federal law that the error affected the judgment, we reverse the judgment of the trial court and remand for a new trial limited to the issue of damages.

## I.

As soon as practicable after receiving the *Hensley II* opinion, we entered an order which outlines the issues we will now address:

> This matter is before the Court on remand from the United States Supreme Court. The High Court reversed our judgment and opinion on petition to rehear entered April 3, 2008. The Court did so with the decree that the case "is remanded for further proceedings not inconsistent with this opinion." The U.S. Supreme Court did not define what those "further proceedings" might be. It may be that the Court anticipated that the Court of Appeals of Tennessee would, without further ado, remand this matter to the trial court for a new trial; but the court did not expressly say this.
>
> We are interested in expediting the resolution of this litigation. Accordingly, the appellant is directed to file a brief limited to and addressing the following issues:
>
> 1. Does the United States Supreme Court's opinion of June 1, 2009, preclude the Tennessee Court of Appeals from now reviewing the record of the trial court's proceedings to determine whether, under Tenn. R.App. P. 36(b), the failure to charge the jury on the standard for fear-of-cancer damages is an "error involving a substantial right [that] more probably than not affected the judgment"?
>
> 2. Did the error of the trial court in failing to charge the jury on the standard for fear-of-cancer damages amount to an "error involving a substantial right [that] more probably than not affected the judgment"?
>
> The appellant's brief will be physically in the hands of the clerk of this Court on or before June 26, 2009. The appellee's brief will be physically in the hands of the clerk on or before July 13, 2009. The appellant's reply brief, if any, will be physically in the hands of the clerk on or before July 24, 2009.

■ We entertained argument on August 6, 2009. Since the facts of the case have been dealt with at some length in both *Hensley I* and *Hensley II*, we invite the curious reader to those opinions for a more complete discussion. For the present context, it is enough to know that the case went to the jury on damages caused by Employee's injuries from asbestosis and toxic encephalopathy. Asbestosis is a lung injury caused by lengthy exposure to asbestos. Persons with asbestosis are at an increased risk for cancer. Encephalopathy is a brain injury, caused in this case by exposure to chemicals. Employee claimed pain and suffering damages from the physical injuries he has sustained, including pain and suffering based on his fear that his asbestosis will turn into cancer. Under FELA, fear of cancer is a recoverable aspect of damages, but only if the fear is "genuine and serious." *Norfolk & Western R. Co. v. Ayers*, 538 U.S. 135, 157, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003).

Liability is established at this point and the parties agree that if our opinion requires a new trial, the trial should be limited to damages. We will discuss further facts relevant to harmless error when and if we reach that point in our discussion. In keeping with our "interest[ ] in

expediting the resolution of this litigation," we move directly to our discussion of the above stated issues.

## II.

### A.

The parties agree that on remand from a higher court we are only precluded from considering issues that were expressly or impliedly decided by the higher court. *See Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.1992). At argument, Railroad conceded that *Hensley II* did not expressly decide whether the failure to give the subject instruction was harmful or harmless, but it maintained that the issue was impliedly decided.

Railroad offers several arguments why the opinion in *Hensley II* should be read to impliedly hold that the refused instruction was harmful. The first and second arguments make more sense if combined. Railroad contends that it made the presentation that it was harmed in its petition for review to the U.S. Supreme Court, and, that by taking the appeal and reversing our opinion without briefing or argument, the Supreme Court must have found the error was prejudicial. Railroad also asserts that the following statement in *Hensley II* is inconsistent with a finding that the missing instruction was harmless error: "Instructing the jury on the standard for fear-or-cancer damages would not have been futile." (*Citing* 129 S.Ct. at 2141). Railroad relies on *Norfolk Southern Railway v. Sorrell,* 549 U.S. 158, 172, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007), for two final, related points. One is that where the Supreme Court's decision allows harmless error analysis on remand, it knows how to direct that as in *Sorrell.* The second is that a "vacated" judgment as in *Sorrell* is susceptible to harmless error review, but a "reversed" judgment is not. The last two points are textbook examples of over generalization. The first two points are sheer speculation. We think it much more likely that the High Court simply found our *Hensley I* opinion to be an ideal vehicle to make a footnoted observation in *Ayers,* 538 U.S. at 159, 123 S.Ct. 1210, black letter law in FELA cases. *See Hensley II,* 129 S.Ct. at 2142–44 (Stevens, J. dissenting). We are left, then, only with the statement from *Hensley II,* that it would not have been futile to give the instruction, to support the argument that the Supreme Court impliedly held the failure to give the instruction harmed Railroad. We do not discount this argument, but we are not convinced the one statement is dispositive.

We believe the majority's silence in the face of Justice Stevens' observation, in footnote 2 of his dissent, speaks volumes. Justice Stevens stated: "Although the Court concludes that the trial court erred by not giving a genuine-and-serious charge, the question of whether the instructional error was nevertheless harmless remains open to review on remand by the Tennessee Court of Appeals." *Id.* at 2144 n. 2. Justice Stevens based his statement, not on conjecture, but on cases that stand for the principle that "while there are some errors to which [harmless-error analysis] does not apply, they are the exception and not the rule." *Hedgpeth v. Pulido,* —— U.S. ——, ——, 129 S.Ct. 530, 532, 172 L.Ed.2d 388 (2008); *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *see Neder v. United States,* 527 U.S. 1, 11, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). These cases involve general verdicts of criminal conviction. The principle stated should apply with equal, if not greater, force in civil cases. We find nothing in the opinion in *Hensley II* to make this case the exception that is not subject to harmless error analysis. Further, any suggestion by the majority that would seem to make this case the

exception is outweighed by the lack of response to Justice Stevens' footnote 2. Accordingly we hold that the opinion in *Hensley II* does not preclude us from considering whether the failure to give the "genuine and serious" charge was harmless.

### B.

■ Before moving to the harmless error analysis, we will deal, briefly, with an issue Railroad volunteered despite our clear order that briefs were to be limited to the specific issues we saw as important. Railroad argues that Employee has waived the issue of harmless error by failing to address it in *Hensley I* and by failing to address it in response to Railroad's petitions to the Tennessee Supreme Court and the United States Supreme Court. We are not persuaded. Frankly, we do not care whether and to what extent Employee talked about harmless error in papers that he filed directed at whether the case was appropriate for further review. In neither our state system, nor in the federal system, is a response to an application or petition for review mandatory. Tenn. R.App. P. 11; Sup.Ct. Rule 15.1.[1] We note that the full briefing cycle did not happen in either court as our Supreme Court did not grant permission to appeal and the United States Supreme Court announced its opinion without the benefit of briefing. It would seem harsh to us to find waiver of an issue based on the failure to address it in a paper that was not required to be filed.

We strongly disagree with the argument that Employee neglected the issue of whether or not the missing instruction caused harm in his brief filed in *Hensley I.* Employee concedes that he did not have a

heading or issue bearing the caption "Harmless Error" in his brief, but argues that he addressed the substance. We agree it is the substance that is controlling rather than the label. *Northeast Knox Utility Dist. v. Stanfort Construction, Inc.,* 206 S.W.3d 454, 461 (Tenn.Ct.App.2006). We have reviewed Employee's brief in *Hensley I* and we believe a fair reading shows that it argues there was no harm in failing to give the genuine and serious instruction. There are multiple passages we could repeat, including the entire argument on sufficiency of the evidence, but the following should suffice as an example:

> CSX simply has not provided this Court with any authority demonstrating it is appropriate to reverse the jury's verdict on the basis of the fear of cancer instructions. The jury returned a verdict of $5,000,000 in favor of Hensley on the basis of the totality of the evidence. To single out the fear of cancer issue takes an extraordinarily narrow view of the overwhelming evidence presented at trial of Hensley's physical and mental problems caused by CSX's failure to provide Hensley with a safe work place. Accordingly, the Court should affirm the jury's verdict and the Trial Court's judgment.

Looking back, had we concluded in *Hensley I* that the trial court erred in failing to give the instruction, we would have considered the above statement, and numerous other ones of similar effect, sufficient to preserve the issue of harmless error.

It is also appropriate, on the issues of past waiver and present disposition, to consider the impact of Tenn. R.App. P 13(b) and 36(b). The latter provides: "A final judgment ... shall not be set aside unless, considering the whole record, error

---

1. The federal rule states that "waiver" *may* result from failure to correct misstatements about what happened in the proceedings "be-

low." Sup.Ct. Rule 15.2. The High Court did not hold that Employee had waived any issue.

involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." We have been furnished with no authority from this state for the proposition that Rule 36(b) is anything other than what it says—a directive to reviewing courts to consider, with or without prompting from the parties, whether any error found "affected the judgment." The former gives us discretion, even as to issues not argued, to consider them in the interest of justice. If the error in failing to give the genuine and serious charge did not, in our opinion, affect the verdict, we would exercise our discretion to sustain the verdict on a harmless error analysis.

## C.

■ Now we consider whether the missing instruction constituted harmless error. The parties have appropriately reminded us of a point of law we noted in *Hensley I*; *i.e.*, "State procedural rules give way to federal law if 'application of [state] rules would interfere with a party's substantive federal rights or defenses.'" *Hensley I*, 278 S.W.3d at 286 (*quoting Pomeroy v. Illinois Cent. R.R. Co.*, No. W2004–01238–COA–R3–CV, 2005 WL 1217590, at *12 (Tenn.Ct.App. W.S., filed May 19, 2005)). Taken one step further, where a procedural rule determines the outcome of an FELA verdict, such as whether or not to grant a new trial, the federal standard should be applied if it is materially different from the state standard. *Blackburn v. CSX Transportation, Inc.*, No. M2006–01352–COA–R10–CV, 2008 WL 2278497 at *11 (Tenn.Ct.App. M.S., filed May 30, 2008); *Jordan v. Burlington N. Santa Fe R.R.*, W2007–00436–COA–R3–CV, 2009 WL 112561 at *17 n. 12 (Tenn.Ct.App. W.S., filed Jan. 15, 2009).

■ Our harmless error rule, previously quoted, looks at whether or not the error

"more probably than not affected the judgment." Tenn. R.App. P 36(b). The parties agree that the federal standard is, as stated in *United States v. Benitez*, 542 U.S. 74, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004), "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (brackets omitted). The parties, however, disagree as to the application of the federal standard. Employee argues that probability is probability; therefore, the federal standard is equivalent to our state standard. Railroad argues that "even if the error did not 'more probably than not' affect the judgment [under the state standard], there is surely a 'reasonable probability' that it did [under the federal standard]." The language in *Benitez* supports Railroad's contention that the federal standard requires something less than a showing by a preponderance of the evidence that the error affected the outcome. "The reasonable-probability standard is not the same as ... a requirement that a defendant prove by a preponderance of the evidence that but for the error things would have been different." *Id.* at 83 n. 9, 124 S.Ct. 2333. As pointed out by Justice Scalia in dissent, these "gradations of probability" are not easy to grasp or apply. *Benitez*, 542 U.S. at 86, 124 S.Ct. 2333 (Scalia, J., dissenting). The clearest guidance we can find in *Benitez*, and the rule we will endeavor to apply, is stated as follows:

> A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding.

*Id.* at 83, 124 S.Ct. 2333 (*quoting Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United*

*States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

■ We will now consider whether the defendant has shown us that in this record there is enough of a probability of a different outcome to undermine our confidence in the verdict. One factor that undermines our confidence that the verdict would be the same with the instruction as without it is the Supreme Court's pronouncement that "rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions." *Hensley II,* 129 S.Ct. at 2141. In *Hensley I,* we concluded that other devices were better suited to controlling the dangers of passion and prejudice, but recognized that passion and prejudice are real problems to be dealt with in these type of cases:

> One purpose of the "genuine and serious" requirement, we believe, is to protect defendants from excessive verdicts based on appeals to jurors' passions with respect to the deeply emotional issue of cancer. Because the mere suggestion of a possibility of cancer has the potential to evoke raw emotions, a juror may be swayed by the barest shred of evidence that a defendant has caused a plaintiff to suffer an increased risk and/or fear of cancer, and may be tempted to overcompensate the plaintiff for such a risk or fear.

278 S.W.3d at 300.

The record in this case is certainly susceptible to the interpretation that some overcompensation, based on passion and prejudice, occurred in this verdict. The brain injury from toxic encephalopathy did not prevent Employee, who was 67 years of age at the time of trial, from driving. Also, up until the time of trial, he continued to give occasional sermons as a guest preacher. An expert witness for Railroad tested Employee's IQ at 115, or, above average. Of course, there was contrary evidence, but there is no doubt Employee continued to function despite his injuries and fears. Counsel for Employee asked the jury to award $3,000,000 as compensation for pain and suffering, including mental suffering for fear of cancer. The jury awarded a total of $5,000,000.

■ A related factor that is appropriate to consider is whether the evidence was such that we can decipher whether or not the error factored into the verdict. *Grandstaff v. Hawks,* 36 S.W.3d 482, 497 n. 28 (Tenn.Ct.App.2000). An instructional error is more likely to be harmful if the evidence on the question is close. *Carney v. Coca–Cola Bottling Works,* 856 S.W.2d 147, 150 (Tenn.Ct.App.1993). Where the evidence is close, the missing instruction may have been the "single factor that turned the tide." *Id.* The normal concern is compounded in the present case by the U.S. Supreme Court's directive that a plaintiff seeking "fear of cancer damages in ... FELA cases ... must satisfy a high standard in order to obtain them." *Hensley II,* 129 S.Ct. at 2141. The "genuine and serious" instruction is purposed to prevent an award based on "slight evidence." *Id.* We held in *Hensley I* that there was material evidence to support the verdict, but the Supreme Court put that holding in a different perspective for instructional error analysis: "[A] properly instructed jury could find that a plaintiff's fear [of cancer] is not 'genuine and serious' even when there is legally sufficient evidence for the jury to rule for the plaintiff on the issue." *Id.* In hindsight, the following evidence we recited as a basis for the verdict should be examined to see if the instruction may have "turned the tide":

> Railroad makes much of Employee's testimony that he has "some concern" over getting cancer "in the back of my mind," like "a little cloud" hanging over his head.... He also testified that he expe-

riences "anxiety"—a term referenced in *Seaford [v. Norfolk S. Ry. Co.,* 159 Ohio App.3d 374, 824 N.E.2d 94 (Ohio Ct.App. 2004)], in contrast to mere "worry" and "concern," as part of the dictionary definition of fear: "the general term for the anxiety and agitation felt at the presence of danger." 824 N.E.2d at 112 (quoting *Webster's New World Dictionary* ). Employee also testified that he takes Xanax for his anxiety, in part because of his fear of cancer[.]

         *        *        *

Railroad asserts that "[t]his testimony . . . was subsequently impeached on cross-examination," when Employee testified that he began taking Xanax before being diagnosed with asbestosis. Yet that fact does not necessarily preclude a jury finding that at least *part* of the reason Employee has *continued* to take Xanax is because of his fear of cancer. . . . Similarly, Dr. Perry's testimony that he does not know the cause of Employee's anxiety does not, as a matter of law, establish that no jury could possibly conclude that fear of cancer was one of the causes.

*Hensley I,* 278 S.W.3d at 301 (bracketed material added). We have read Employee's brief carefully for additional citations to the record reflecting additional evidence to show that the fear of cancer was genuine and serious. Other than references to medical testimony that Employee was indeed at an increased risk for cancer, and, therefore, has a basis for his fear, we have found nothing. This does not help our analysis because we have accepted as true that Employee is at an increased risk for cancer. Employee concedes that in this general verdict it is impossible to determine the amount the jury awarded for any particular item of damages. Employee suggests that the jury could easily have awarded $5,000,000 based on medical ex-

penses, lost earnings, lung problems and damages for the worry and concern without regard to the fear of cancer. Therefore, Employee asks us to conclude that the award would have been the same with or without the instruction. Employee's approach is inconsistent with this large verdict, and is an invitation to abdicate our duty to re-examine our confidence in the outcome in light of probabilities and not speculation.

We believe that the evidence on the fear of cancer claim, while legally sufficient to sustain the verdict, was close. This factor weighs against finding the error was harmless.

■ Another factor that influences the degree of harm from an instructional error is the extent other instructions in the charge covered the subject matter. *Gorman v. Earhart,* 876 S.W.2d 832, 836–37 (Tenn.1994). Employee argues that the "raw emotion" concern is dispelled by an instruction from the trial court that the jury "must not be influenced by any personal likes or dislikes, prejudice, or sympathy." Likewise, Employee argues that the concern about the verdict being based on "slight evidence" is overcome by instructions that the verdict must be proven by "a preponderance of the evidence," could not be based on "mere speculation and conjecture," and should be "a reasonable sum to compensate" for injuries Employee sustained. In light of the U.S. Supreme Court's holding in *Hensley II,* we are reluctant to say that this instruction, which the Highest Court in the Land has held was required, was covered or explained in other, standard, parts of the jury charge. Nevertheless, we have considered Employee's arguments and find them to be without merit. If standard charges, given in almost all civil trials, cured substantive errors in the instructions, there would be few, if any, harmful errors. Also, accept-

ing the holding of *Hensley II*, as we must, there is nothing else in the charge that deals with the nature of the fear that must be proven. Thus, we are not persuaded that other parts of the charge covered the subject matter.

■ The final factor we will consider, at the urging of Railroad, is the extent to which the subject matter that the instruction addresses, or fails to address, is at "the heart of the case." *See Hughes v. Lumbermens Mut. Cas. Co.*, 2 S.W.3d 218, 225 (Tenn.Ct.App.1999). We do not disagree this is a factor for consideration, but our focus is a little different from Railroad's. Railroad tries to convince us Employee made fear of cancer the focus of the case, by statements such as:

> At the beginning of his opening statement, Hensley's counsel listed the things that "[t]his case is about," *one* of which was "an increased risk and fear of cancer." Soon thereafter, he informed the jury that the case involved "three basic questions," *one* of which was "what is the proper compensation for all the damage the railroad has caused to Mr. Hensley's lung and his brain, *including* the increased risk and fear of cancer?" Counsel later told the jury that "*one* of the issues that you'll be considering is whether he's at increased risk and fear of this cancer" and that "[y]ou're going to hear about the future mental and physical pain and suffering," *including* Hensley's "concern[ ] about cancer, concern[ ] about dying of his condition, concern[ ] about the fact that he can't take care of his wife." Counsel also referred to the risk and fear of asbestos-related cancer four other times during his opening.

(Emphasis added, brackets in original). The above argument convinces us that, rather than being the "focus," fear of cancer was "*one*" of the issues. But, this

does not end our inquiry. Even though we are not necessarily convinced fear of cancer was *the* "heart" of the case, we would agree it was a vital organ. Given the size of the verdict, there is a reasonable probability that the jury awarded damages for fear of cancer. If they did, they did it based on an incomplete instruction that, according to law established in *Hensley II*, did not give them all the information they needed to make that decision. As explained in *Bara v. Clarksville Memorial Health Systems, Inc.*, 104 S.W.3d 1 (Tenn. Ct.App.2002), "the soundness of every jury verdict rests on the fairness and accuracy of the trial court's instruction. Since the instructions are the sole source of the legal principles needed to guide the jury's deliberations, trial courts must give substantially accurate instructions concerning the law applicable to the matters at issue." *Id.* at 3–4 (*quoting Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 93 (Tenn.Ct.App.1996)). Since fear of cancer was definitely one of the "matters at issue" upon which the jury probably based its award, we think this factor weighs against a finding of harmless error.

In summary, we have applied the federal standard of harmless error because it seems to require less of the defendant than establishing, to a preponderance, that the verdict would have been the same without the error. We have looked to numerous cases for factors that have proven useful in determining whether instructional error is harmless. Our confidence in the verdict is undermined by the fact that fear of cancer claims are likely to invoke passion and prejudice. The evidence was close enough that the missing instruction may have turned the tide. We do not find other instructions covering the subject matter that the "genuine and serious" instruction was intended to cover. The fear of cancer claim was probably one of the matters in the case that drove the award to $5,000,000. We hold that Rail-

road has shown a probability of a different result sufficient to undermine our confidence in the verdict. Accordingly, we hold that the error was not harmless.

### III.

To the extent the parties have advanced arguments not directly invited by our order, we have not attempted to address the "jot and tittle" of every contention. We will, however, briefly address one collateral argument made by Employee because it will help us provide guidance to the parties and the trial court as to what is and is not subject to debate on remand. Employee argues "despite the fact that CSX was entitled to a *fear of cancer* instruction, its proposed instructions [30 and 33] were incorrect statements of law and therefore not permissible under Tennessee law." Therefore, Employee argues, this court and the trial court are free to reinstate the verdict.

Employee's argument overlooks the doctrine of law of the case which is said to promote efficiency, consistency and obedience of lower courts to the decisions of higher courts. *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn.Ct.App.2001). "[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Id.* Thus, we are bound and the trial court is bound as to issues decided in *Hensley II*. And, the trial court is bound as to issues we decide in this opinion as well as those issues we decided in *Hensley I*, except as *Hensley I* was modified by *Hensley II*.

As relates to the "genuine and serious" instruction, the Supreme Court expressly held as follows in *Hensley II*:

---

The ruling of the Tennessee Court of Appeals [in *Hensley I* ] conflicts with *Ayers*. The trial court should have given the substance of the requested instructions [30 and 33].

This does not necessarily mean that in the new trial the instructions previously proposed must be given word-for-word.[2] It does mean, however, that neither this court nor the trial court is free to simply reinstate the verdict. The "substance" of the requested instructions, plural, must be given if Employee asks the jury to award damages based on fear of cancer.

### IV.

The judgment of the trial court is reversed. Costs on appeal are taxed to the appellee, Thurston Hensley. This case is remanded to the trial court, pursuant to applicable law, for a new trial on damages only.

---

**2.** We believe it is no coincidence the Supreme Court's opinion in *Hensley II* deletes certain material when it quotes number 30, and refers to number 33 in general terms.