IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 22, 2016 Session

## JAMI LOGIAN A/K/A JAMI LOGIAN GOBEA v. LEE R. MORISY MD, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-003192-12   Robert L. Childers, Judge**

_____

**No. W2015-02369-COA-R3-CV – Filed August 11, 2016**

_____

This is a jury case arising from Appellant's healthcare liability claim against Appellee doctors. The jury returned a verdict in favor of the doctors. Appellant asserts that the trial court erred in allowing a pictograph to be passed to the jury and admitted into evidence. Appellant also asserts that the trial court should have charged the jury with a special instruction on damages. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and WILLIAM B. ACREE, SP. J., joined.

Louis P. Chiozza, Christopher W. Lewis, Memphis, Tennessee, and Steven R. Walker, Oakland, Tennessee for the appellant, Jami Logian.

Katherine M. Anderson, Karen S. Koplon, and Hugh Francis, Memphis, Tennessee, for the appellee, Lee R. Morisy, M.D..

Jerry E. Mitchell, and Christopher B. Sullivan, Memphis, Tennessee, for the appellees Diane Jalfon, and Gastrointestinal Specialists, P. C.

## OPINION

### I.     Background

On December 28, 2005, Appellant Jami Logian Gobea presented at the Baptist Hospital Emergency room, where she was seen and admitted by Dr. Issac Jalfon, a board certified gastroenterologist.[1] Dr. Jalfon ordered a surgical consultation with Dr. Lee Morisy. Dr. Morisy determined that Appellant suffered from a severe case of complicated diverticulitis. After consultation with Dr. Morisy, Appellant decided to address her condition surgically. Dr. Morisy and his resident performed the surgery on January 6, 2006. The surgery, a low anterior resection of the sigmoid colon, involved removing the diseased portion of Appellant's colon and reconnecting it.

Appellant remained in the hospital until January 12, 2006, when Dr. Morisy ordered her discharge. Dr. Jalfon was involved in approving or assenting to the discharge order, and his involvement in the discharge order is the only allegation of negligence that Appellant makes against Dr. Jalfon. Appellant returned to the hospital on January 14, 2006, at which time CT scans indicated that her left ureter was blocked. The blockage was apparently caused by a staple that was used to reconnect Appellant's sigmoid colon.

On July 23, 2012, Appellant filed the instant healthcare liability action against Dr. Morisy, Dr. Jalfon's estate, and Gastrointestinal Specialists, P.C. (together "Appellees"). In her complaint, Appellant alleged, among other things, that the Appellees were guilty of medical negligence in stapling Appellant's ureter and that Appellees failed to detect, diagnose and treat the stapled ureter prior to Appellant's release from the hospital. Additionally, Appellant alleged that the Appellees failed to comply with the recognized standard of medical care in Memphis. Both doctors filed motions to dismiss for alleged violation of the notice provisions of the Tennessee Healthcare Liability Act as found in Tennessee Code Annotated Section 29-26-121. The Appellees' motions to dismiss were denied.

Following discovery, the parties filed numerous motions in limine, including motion in limine 22, which is involved in the instant appeal. Motion in limine 22 requested that the trial court prohibit the use of medical literature as substantive evidence, including placing diagrams, drawings and photographs taken from such treatises before the jury. The motion further requested that the prohibition extend to any attempts to read, refer to, or in any way publish the content of such literature before the jury. However, the motion also contained a footnote, which reads in pertinent part:

> [Appellant] does not request that such diagrams, drawings and photographs be absolutely prohibited if a foundation for use is properly made, only that the diagrams, drawings and photographs be completely disassociated from any "learned treatise" and that the parties be prohibited from informing the jury

---

[1] Dr. Jalfon died on April 17, 2010, and his estate was substituted as a party.

that such diagrams, drawings and photographs are from a "learned treatise," or otherwise "authoritative."

The motion was granted by consent order entered April 4, 2016. Exhibit 34, which is the subject of one of the issues in this case, is labeled "Incidence of Uretal Injury in Distal Colon Surgeries." There is no notation that exhibit 34 is part of a learned treatise or any other authoritative text.

The case was tried to a jury from July 13, 2015 to July 23, 2015. At trial, Appellant argued that Dr. Morisy should have placed a stent in Appellant's ureter prior to reconnecting her colon in order to help Dr. Morisy identify the ureter during the procedure. During the direct examination of Dr. Stephen Behrman, who was one of Dr. Morisy's experts, Dr. Morisy's attorney introduced exhibit 34. This exhibit illustrates the premise that the relative percentage of patients, who suffer ureteral injury when stenting is used during surgery, is greater than when stenting is not used. As set out in context below, Dr. Behrman used the exhibit to illustrate that the use of ureteral stents during surgery does not necessarily protect the ureters from injury. Appellant's attorney objected to the introduction of the exhibit, and the trial judge held a bench conference, in which Appellant's attorney argued that the exhibit was misleading to the jury. The trial court overruled Appellant's objection. On cross-examination, Appellant's attorney was given the opportunity to question Dr. Behrman about the exhibit.

Following the close of proof, the trial court held a charging conference. Appellant requested that the jury be given a special instruction regarding damages. As set out in context below, Appellant asked the trial court to charge that Appellees take the Appellant as they find her, even if the Appellees' negligent act or omission caused unforeseeable consequences resulting from the Appellant's preexisting physical condition. The trial court denied Appellant's request for the special instruction.

Following deliberation, the jury found in favor of the Appellees. On July 29, 2015, the trial court entered a judgment on the jury verdict, which stated that the Appellees "acted with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice for their profession and specialty of general surgery and gastroenterology in this community. . . ." Appellees filed motions for discretionary costs; these motions were denied. Appellant filed her motion for new trial on August 28, 2015. As required, the motion for new trial sets out the issues raised on appeal. Tenn. R. App. P. 3(e). The trial court denied the motion for new trial by order of November 4, 2015. Appellant appeals.

## II.    Issues

Appellant presents the following issues on appeal as stated in her brief:

1.    Whether the trial court erred in admitting an exhibit which was nothing more than a summary from medical literature, and then allowing it to be published to the jury – all contrary to Tennessee Rule of Evidence 618.

2.    Whether the trial court erred in refusing to instruct the jury on the instruction proposed by [Appellant] and supported by the proof.

### III.    Analysis

### A.    Admission of Trial Exhibit 34

As noted above, trial exhibit 34 is a pictograph titled "Incidence of Ureteral Injury in Distal Colon Surgeries," which illustrates that the relative percentage of patients who suffer ureteral injury, when stenting is used during surgery, is greater than when stenting is not used.  Decisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion and will not be disturbed on appeal unless the trial court abused its discretion.  **State v. Banks**, 271 S.W. 3d 90, 116 (Tenn. 2008) (citing **State v. Robinson**, 146 S.W. 3d 469, 490 (Tenn. 2008)).  The abuse of discretion occurs when the court applies incorrect legal standards, reaches an illogical conclusion, or employs reasoning that causes an injustice to the complaining party.  **Id**. (citing **Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.**, 249 S.W. 3d 346, 358 (Tenn. 2008)).  In determining whether the trial court abused its discretion, an appellate court should presume that the trial court's decision is correct and should review the evidence in the light most favorable to the decision.  **Lovelace v. Copley**, 418 S.W. 3d 1, 16-17 (Tenn. 2013) (citing **Gonsewski v. Gonsewski**, 350 S.W. 3d 99, 105-106 (Tenn. 2011)); *see also* Tenn. R. App. P. 13(d).

In **Robinson v. Baptist Memorial Hospital–Lauderdale,** No. W2006-01404-COA-R3-CV, 2007 WL 2318185 (Tenn. Ct. App. Aug.15, 2007), *no perm. app. filed,* this Court noted that:

[A] trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *See* **Otis v. Cambridge Mut. Fire Ins. Co.,** 850 S.W.2d 439 (Tenn. 1992); **Davis v. Hall,** 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995). The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable

alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*Id.* at \* 4.

Rule 618 of the Tennessee Rules of Evidence contains the requirements for impeaching an expert witness with a learned treatise. The rule reads:

To the extent called to the attention of an expert witness upon cross-examination or relied upon by the witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness, by other expert testimony, or by judicial notice, may be used to impeach the expert witness's credibility but may not be received as substantive evidence.

Tenn. R. Evid. 618. Appellant argues that the trial court erred in admitting trial exhibit 34 and allowing it to be published to the jury. Specifically, Appellant argues that the admission of exhibit 34 into evidence is contrary to Rule 618 of the Tennessee Rules of Evidence because it is nothing more than a summary from medical literature. Appellant also argues that the order on motion in limine 22 expressly prohibits exhibit 34. Although the plain language of Rule 618 indicates the trial court may have erred in admitting exhibit 34 into evidence, a more thorough review of the record reveals otherwise.

The trial court, in ruling on Appellant's objection to exhibit 34 prior to trial, initially held that the exhibit could be presented to the jury as demonstrative evidence only, but could not be published to the jury. Appellees' attorney argued that she would use the exhibit for demonstrative purposes to illustrate the expert's opinion that stenting a patient, in and of itself, is not without risks, and that prophylactic stenting actually has a higher rate of injury than no stenting at all. Appellees' attorney argued that the use of this pictograph illustrated the testimony concerning the risk/benefit analysis used by surgeons in determining a course of treatment, *see infra*.

Early in the trial, a bench conference was held outside the presence of the jury to discuss the admission of a different diagram that Appellant was attempting to enter into evidence. The diagram, which was later admitted as trial exhibit 10, depicted the diseased section of Appellant's colon that was removed and the two ends that were reconnected.

During the bench conference, Dr. Morisy's attorney argued that Appellant's diagram was demonstrative only, and, therefore, should not be passed to the jury. Appellant's attorney took the position that "anything can be passed to the jury that would assist him in explaining what occurred . . . ." Appellant's attorney then suggested that he would withdraw his objection to Dr. Morisy's attorney passing his diagrams to the jury if he were allowed to pass his diagram to the jury as substantive evidence. Dr. Morisy's attorney answered, "If we have an agreement with [Appellant's attorney] that we can do the same thing with our exhibits, we'll agree." Thus, from the record, it appears that Appellant's attorney agreed to the entry of exhibit 34. It also appears that this agreement was conceded during the hearing on the motion for new trial, where Appellant's attorney made the following statement:

> [T]he court did commit error in our opinion when we – when they allowed this chart to go to the jury, and I know there's an issue that I agreed to it so I'm not going to argue too sternly about that portion of it. . . .

Furthermore, the record contains independent evidence to support the premise that stenting, in and of itself, does not prevent uretal injury. Dr. Ahsan Ali, an expert for Appellant, testified at trial. When asked whether stents should have been used during Appellant's surgery, Dr. Ali stated:

> I mean, clearly hindsight is 20/20, but if you have a difficult case, yes. I've used stents when I'm doing sometimes the operative – the surgery. Stenting would have helped. Would it have prevented an injury? Studies have shown that stenting or putting a plastic tubing in the ureter beforehand is not a benign procedure. It does not really prevent injury. . . .

Later in the trial, Dr. Behrman, testified as follows:

> Q. How does judgment on the part of a physician come into play in treating a patient and performing surgery?
>
> A. Surgical judgment is huge. I tell my trainees that. They think that everything is just about cutting and sewing, and that's not really what it's all about. It's really about your judgment, knowing when and when not to operate on somebody, knowing the right thing to do in surgery, knowing how to take care of complications when they occur after surgery. So surgeon judgment is everything in surgery. The technical aspect I would submit many times is nowhere near as important.

***

- 6 -

[Exhibit 34 is passed to the witness]

Q.	Does this exhibit -- is it accurate?

A.	Yes, these are statistics that are published in the literature.

At this point, Appellant's attorney objected to the introduction of exhibit 34, and the trial judge held a bench conference, in which Appellant's attorney argued that the exhibit was misleading to the jury. The trial court overruled Appellant's objection. Dr. Morisy's attorney then continued the direct examination of Dr. Behrman as follows:

Q.	Can you explain to this jury how this exhibit helps you in your testimony as to the stenting of a ureter?

A.	I think this really speaks to the judgment of when we do or don't use [stents]; and most of the time when they put stents in, they are for much worse problems, big cancers that are laying across the ureter, big pockets of infection that are laying around the ureter, things that did not occur in this case, and I think this proves to [sic] the point that even though a stent is put in, when you're dealing with issues such as that, it still doesn't prevent ureteral injury.

***

Q.	Would that stent have prevented the stapling procedure?

A.	It definitely wouldn't prevent it. You could staple right through it.

From the foregoing testimony, we conclude that it was Appellant's expert, Dr. Ali, who first provided evidence that placing a stent in the ureter during surgery would not, necessarily, prevent injury to the ureter. Appellees' expert, Dr. Behrman, merely corroborated Dr. Ali's testimony.

However, even if we assume, arguendo, that the trial court erred in allowing exhibit 34 into evidence, the Appellant must, nonetheless, show that the error was reversible. To establish reversible error, the Appellant must show that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). In this case, the corroborating testimony of two opposing expert witnesses negates a finding that the admission of exhibit 34 "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). "It is well

established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." ***Carpenter v. Klepper***, 205 S.W. 3d 478, 485 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Oct. 2, 2006) (internal citations omitted). Accordingly, we cannot conclude that the trial court abused its discretion in either passing exhibit 34 to the jury or in admitting the exhibit into evidence.

## B.    Denial of Special Jury Instruction

The Appellant argues that the trial court erred in refusing to give a special instruction to the jury. Appellant requested that the trial court instruct the jury as follows:

> A[n] [appellee] takes his victim as he finds him. Thus, a[n] [appellee] is responsible for all damages resulting from his negligence, even though, because of the [Appellant's] preexisting frailty of health, the injuries proved to be more severe than they would have been in a normal person.

The determination of whether jury instructions are proper is a question of law. ***Solomon v. First Am. Nat'l Bank***, 774 S.W. 2d 935, 940 (Tenn. Ct. App. 1989). The standard of review for questions of law is de novo without a presumption of correctness afforded to the lower court's conclusions of law. ***State ex rel. Pope v. U.S. Fire Ins. Co.***, 145 S.W. 3d 529, 533 (Tenn. 2004). Therefore, "whether a jury instruction is erroneous is a question of law and is, therefore, subject to de novo review with no presumption of correctness." ***Payne, v. CSX Transportation, Inc.***, 467 S.W. 3d 413 (Tenn. 2015) (citing ***Nye v. Bayer Cropscience, Inc.,*** 347 S.W. 3d 686, 699 (Tenn. 2011)).

Our Supreme Court has explained the standard for evaluating jury instructions in civil cases as follows:

> Trial courts have "a duty to impart 'substantially accurate instructions concerning the law applicable to the matters at issue.'" ***Nye v. Bayer Cropscience, Inc.,*** 347 S.W.3d at 699 (quoting ***Hensley v. CSX Transp., Inc.,*** 310 S.W.3d 824, 833 (Tenn. Ct. App. 2009)). This is important because "[t]he legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the sole source of the legal principles required for the jury's deliberations." ***Id.*** In determining whether a jury instruction is substantially accurate, we review the charge in its entirety and consider it as a whole, and we will not invalidate an instruction that "'fairly defines the legal issues involved in the case and does not mislead the jury.'" ***Id.*** (quoting ***Otis v. Cambridge Mut. Fire Ins. Co.,*** 850 S.W. 2d 439, 446 (Tenn. 1992)).

Moreover, "[j]ury instructions are not measured against [a] standard of perfection." *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W. 3d 495, 504 (Tenn. 2012) (first alteration in original) (quoting *City of Johnson City v. Outdoor W., Inc.*, 947 S.W. 2d 855, 858 (Tenn. Ct. App. 1996)).

*Spencer v. Norfolk S. Ry. Co.*, 450 S.W. 3d 507, 510 (Tenn. 2014). Therefore, the charge will not be invalidated as long as it fairly defines the legal issues involved in the case and does not mislead the jury. *Id; see also Stanfield v. Neblett*, 339 S.W.3d 22, 40 (Tenn. Ct. App. 2010). Furthermore, a judgment should only be reversed when the improper denial of a request for a special jury instruction has prejudiced the rights of the requesting party. *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W. 3d 365 (Tenn. 2006) (citing *Spellmeyer v. Tenn. Farmers Mut. Ins. Co.*, 879 S.W. 2d 843, 846 (Tenn. Ct. App. 1993)).

In this case, the plain language of the requested instruction indicates that it relates solely to the issue of damages. Here, the jury found that Appellees "acted with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice for their profession and specialty of general surgery and gastroenterology in this community. . . ." In other words, having found that Appellees were not liable for Appellant's injuries, the jury never reached the question of damages. *See Evans ex rel. Evans v. Williams*, No. W2013-02051-COA-R3-CV, 2014 WL 2993843, at *4 (Tenn. Ct. App. June 30, 2014) ("The jury returned with a unanimous verdict that the Appellees had not violated the applicable standard of care in prenatal care and labor of Mother or in the delivery of the child. In so finding, the jury was not required to address issues of causation and damages."). Because the jury never reached the question of damages, Appellant is unable to show prejudice. Therefore, even if the trial court erred in refusing charge the jury with Appellant's special instruction, it was harmless error.

## IV.    Conclusion

For the foregoing reasons, we affirm the order of the trial court. This case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Jami Logian and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE