IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2016 Session

## DEMENT CONSTRUCTION COMPANY, LLC v. LUCAS C. NEMETH, ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 63359     J. Mark Rogers, Judge**
_____

**No. M2015-02204-COA-R3-CV – Filed December 20, 2016**
_____

This case arises from landowners' counter-suit for damages allegedly resulting from a construction company's use of the landowners' property to store excess topsoil from a road construction project. Following a trial, the jury returned a verdict in favor of the construction company, finding that the construction company was not responsible for the alleged damage to the property. The landowners appeal, asserting that the trial court made erroneous evidentiary rulings and failed to properly instruct the jury. Finding no error, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and KENNY W. ARMSTRONG, JJ., joined.

G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellants, Lucas C. Nemeth, Molly Nemeth, and Mischa Nemeth.

Edwin E. Wallis, Jr., Jackson, Tennessee, and Evan Cope and Nicholas C. Christiansen, Murfreesboro, Tennessee, for the appellee, Dement Construction Company, LLC.

## OPINION

In the summer of 2011, Dement Construction, LLC ("Dement") was engaged in a road construction project for the City of Murfreesboro in Rutherford County, Tennessee. Dement entered into an oral agreement with Lucas Nemeth to store topsoil on Nemeth's property located at 2887 Barfield Road, Murfreesboro, Tennessee ("the Property") during the course of the construction project.

On August 12, 2011, Dement filed a complaint against Lucas Nemeth and his wife, Molly Nemeth (collectively, "the Nemeths"), alleging that the Nemeths "failed to permit Dement to retrieve the topsoil," and sought a writ of replevin, temporary injunction, compensatory damages, and punitive damages. Mischa Nemeth, Lucas Nemeth's brother, was later added as a party to the lawsuit due to his ownership interest in the property in question. On October 31, 2011, the trial court held a hearing on Dement's request for injunctive relief, and on November 10, 2011, entered an order allowing Dement to remove the topsoil from the Nemeths' property upon posting a bond for any damages associated with the removal.

On November 10, 2011, the Nemeths filed an amended answer and counterclaim seeking monetary relief. Specifically, the Nemeths alleged that Dement "intentionally misrepresented the fact that Dement intended to occupy several acres of Nemeth's property, and to waste material thereon, by telling Nemeth that Dement would only have 'a couple loads' spill over onto Nemeth's property from the temporary construction easement," and that Dement operated heavy equipment on the Property which caused damage to the Property. On January 31, 2012, Dement filed a reply to the Nemeths' counterclaim. Several ensuing motions and orders were filed unrelated to the issues on appeal, and a pretrial conference was held on February 19, 2015, at which Dement declared that it was not seeking monetary damages against the Nemeths.

The issues on appeal arise from a five-day jury trial which was held on the Nemeths' counterclaim. Lucas Nemeth, co-owner of the Property; Randy Dickerson, a soil scientist; William Huddleston, a civil engineer; Jackie Wilson, a grading superintendent at Dement Construction; Mischa Nemeth, co-owner of the Property; Russell Parrish, an appraisal expert; and James Reed, an engineer and land surveyor, testified during the trial.

Following the testimony of Mischa Nemeth, the trial court solicited written, anonymous questions from the jury in accordance with Tenn. R. Civ. P. 43A.03. The jurors proposed the following three questions to be asked of Mischa Nemeth:

(1) Was building Veterans Parkway a free improvement to your property?
(2) How much would you estimate your property value increased after Veterans Parkway was put in?
(3) Would you rather Veterans Parkway not be put in and your property not be used to temporarily store the soil and rock?

The attorneys for both parties engaged in a lengthy discussion of the questions with the trial court judge outside the presence of the jury. The Nemeths' attorney objected to the questions, stating, "Objection to relevance. Has nothing to do with any of the issues in this suit. If it were a condemnation involving - - some of them would have some relevance. This isn't a condemnation." The trial court overruled the objection and

allowed the questions to be asked of Mischa Nemeth.

Russell Parrish, an appraisal expert for the Nemeths testified next. The Nemeths' attorney posed a series of questions to Mr. Parrish regarding the concept of eminent domain and special benefits. The following dialogue occurred:

> [Nemeths' Attorney]: Okay. Now, let me ask you about some of those concepts. First explain to me the concept in the eminent domain world of a special benefit?
> [Dement's Attorney]: I'm going to object. Can we approach?
> . . . .
> (The following proceedings were had before the Court and out of the hearing of the Jury)
> [Dement's Attorney]: What he does on condemnation cases is irrelevant.
> [Nemeths' Attorney]: It is now.
> COURT: Why is it relevant?

Counsel for the Nemeths argued that the jurors' questions had opened the door to testimony about condemnation law. The trial court sustained Dement's objection and permitted the Nemeths to submit an offer of proof, during which Mr. Parrish testified more extensively regarding the concept of "special benefits." At the jury charge conference, the Nemeths submitted a proposed "curative" jury instruction. The trial court declined to use the proposed jury instruction.

After deliberations, the jury returned a verdict in favor of Dement, finding that the Nemeths did not prove that Dement was at fault for damages sustained to the Property. The jury did not reach the question of compensatory damages. The Nemeths appeal, asserting that the trial court erred in allowing the juror questions, erred in failing to permit the Nemeths to introduce testimony regarding the concept of "special benefits," and improperly disallowed their proposed curative jury instruction.

STANDARD OF REVIEW

Trial court judges are afforded broad discretion to direct the "course and conduct" of jury trials. *State v. Caughron*, 855 S.W.2d 526, 541 (Tenn. 1993). "Such discretion necessarily extends to making determinations regarding the admissibility of evidence, *see Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011), and controlling the scope and manner of examination of witnesses." *Pyle v. Mullins*, No. E2012-02502-COA-R3-CV, 2013 WL 6181956, at *5 (Tenn. Ct. App. Nov. 25, 2013) (citing *Coffee v. State*, 216 S.W.2d 702, 703 (Tenn. 1948)). A trial court's "decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). A trial court abuses its discretion

- 3 -

when it "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

"Whether a jury has been properly instructed and whether an error in instruction more probably than not affected the jury's verdict are questions of law that are reviewed de novo with no presumption of correctness." *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007).

ANALYSIS

The issues on appeal stem from the jurors' questions the trial court asked of Mischa Nemeth. Tennessee Rule of Civil Procedure 43A.03 governs the procedure whereby jurors may ask questions of a witness:

> In the court's discretion, a juror desiring to propound a question to a witness may be permitted to do so. The juror must put the question in written form and submit it to the judge through a court officer at the end of a witness' testimony. The judge shall review all such questions and, outside the hearing of the jury, shall consult the parties about whether the question should be propounded. The judge, in his or her discretion, may ask the juror's question in whole or part and may change the wording of the juror's question before propounding it to the witness. The judge may permit counsel to ask the question in its original or amended form in whole or part, in the judge's discretion. When juror questions are permitted, early in the trial jurors shall be instructed about the mechanics of asking a question. In addition, the jurors shall be instructed to give no meaning to the fact that the judge chose not to ask a question or altered the wording of a question submitted by a juror. A juror's question shall be anonymous, so that the juror's name is not included in the question. All jurors' questions, whether approved or disapproved by the court, shall be retained for the record.

At the conclusion of Mischa Nemeth's testimony, the trial court solicited written questions from the jury in accordance with Tenn. R. Civ. P. 43A.03. The trial court then held a bench conference, outside the presence of the jury, during which the Nemeths raised a relevancy objection to the questions, which the trial court overruled. The court proceeded with the following colloquy:

> THE COURT: . . . Was building Veterans Parkway a free improvement to your property?
> THE WITNESS: Yes.
> THE COURT: Next question: How much would you estimate your

- 4 -

property value increased after Veterans Parkway was put in?

THE WITNESS:  I don't know.

THE COURT:  Next question:  Would you rather Veterans Parkway not be put in and your property not be used to temporarily store the soil and rock?

. . . .

THE WITNESS:  I would rather Veterans Parkway not be put in and my property not have been damaged by storing, by the heavy equipment.

THE COURT:  Thank you, sir.  You can step down.

The Nemeths first argue that the juror questions were "irrelevant and highly prejudicial" because "the ultimate question at trial was whether Dement damaged the Nemeths' property."  The Tennessee Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  TENN. R. EVID. 401.  Even if relevant, evidence may still be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  TENN. R. EVID. 403.  Trial courts must balance the probative value of the evidence against its potential prejudicial effect, and "when the balance between the evidence's probative value and any prejudicial effect is close, the evidence should be admitted."  *Goodale v. Langenberg*, 243 S.W.3d 575, 587 (Tenn. Ct. App. 2007).  Thus, "excluding relevant evidence under [TENN. R. EVID.] 403 'is an extraordinary step that should be used sparingly.'"  *Id.* (quoting *Richardson v. Miller*, 44 S.W.3d 1, 21 (Tenn. Ct. App. 2000)).

We have reviewed the jurors' questions and the answers given by Mischa Nemeth and have determined that the trial court did not err in allowing the jurors' questions.  The Nemeths define the "ultimate question at trial" too narrowly.  The jurors' questions were relevant to the issue of whether the alleged damage Dement caused to the Property affected the Property's value.  The jury ultimately found that Dement was not at fault for damages to the Nemeths' property, thus it never reached the issue of compensatory damages.  As this Court has explained, excluding relevant evidence should be done "sparingly."  *Goodale*, 243 S.W.3d at 587.  Moreover, we find no basis to conclude that the questions asked of and answered by Mischa Nemeth influenced the jury in such a way that the Nemeths were unfairly prejudiced.  The trial court did not abuse its discretion in allowing the jurors' questions.

Next, the Nemeths assert the trial court erred in refusing to allow the Nemeths' attorney to ask follow-up questions to Mischa Nemeth in response to the jurors' questions.  Rule 43A.03 does not require the judge to allow each side to ask follow-up questions based on the witness's responses to juror questions.  "[T]he propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge."  *Caughron*, 855 S.W.2d at 540.  We find nothing in the record that would

lead us to conclude that the trial court abused its discretion in refusing to allow the parties to ask follow-up questions of Mischa Nemeth after he answered the jurors' questions.

The Nemeths also assert the court erred in sustaining Dement's objection to Russell Parrish's testimony regarding the concept of "special benefits." The pertinent portion of Mr. Parrish's testimony is as follows:

> [Nemeths' Attorney]: Okay. I want you to put on your eminent domain hat for me a minute, if you would?
> [Mr. Parrish]: All right, sir.
> [Nemeths' Attorney]: Okay. Now I have some questions of you and I want to preface that by asking you, you told us earlier that you have been qualified as an expert witness in condemnation cases throughout Middle Tennessee, is that correct?
> [Mr. Parrish]: Yes, sir.
> [Nemeths' Attorney]: And that includes this Court, does it not?
> [Mr. Parrish]: Yes, sir.
> [Nemeths' Attorney]. And it also includes the Federal Court in Nashville, correct?
> [Mr. Parrish]: That is correct.
> [Nemeths' Attorney]: Okay. And you testify about condemnation matters all the time, is that right?
> [Mr. Parrish]: Yes, sir.
> [Nemeths' Attorney]: Okay And when you look -- and there are actually treatises about eminent domain that experts like you refer to and there are certain concepts included from these appraisal institute manuals, would that be true?
> [Mr. Parrish]: Yes, sir.
> [Nemeths' Attorney]: Okay. Now, let me ask you about some of those concepts. First explain to me the concept in the eminent domain world of a special benefit?
> [Dement's Attorney]: I'm going to object. Can we approach?
> [Nemeths' Attorney]: Yes, we can approach.

We have reviewed the record and have determined that the trial court did not abuse its discretion when it prohibited the introduction of proof regarding "special benefits," a concept intertwined with the legal theory of eminent domain.[1] Eminent domain is the "power of the government to take privately-owned property, in particular land, and

---

[1] Black's Law Dictionary defines "special benefit," in the context of eminent domain, as "A benefit that accrues to the owner of the land in question and not to any others. Any special benefits justify a reduction in the damages payable to the owner of land that is partially taken by the government during a public project." BLACK'S LAW DICTIONARY (10th ed. 2014).

convert it to public use, subject to reasonable compensation to the property owner for the taking." *Windrow v. Middle Tenn. Elec. Membership Corp.*, 376 S.W.3d 733, 736-37 (Tenn. Ct. App. 2012). This case involves a dispute between a private citizen and a construction company. The government's power of eminent domain, and the concept of special benefits, therefore, have no relevance to this case, and the trial court did not err in excluding testimony related to these issues.

Finally, the Nemeths argue that the trial court erred in refusing to adopt their proposed "curative" jury instruction, which stated:

> During the course of this trial, certain questions were asked by you regarding any appreciation or enhancement of the property due to the Veterans Parkway project, and the opinion of the Nemeths as to whether they would prefer to have that improvement. Those questions were allowed to be asked, but the enhancement or appreciation of the property due to the project is not an issue in this action. You are not to consider it in your deliberations.

The Nemeths assert that the trial court erred because "the jury was not instructed that the benefit of the road was not to be considered in evaluating a case based on misrepresentation and property damage" and that the failure to provide the instruction "affected the outcome of the trial."

Our Supreme Court has explained the standard for evaluating jury instructions in civil matters thusly:

> Trial courts have "a duty to impart 'substantially accurate instructions concerning the law applicable to the matters at issue.'" [*Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011)] (quoting *Hensley v. CSX Transp., Inc.*, 310 S.W.3d 824, 833 (Tenn. Ct. App. 2009)). This is important because "[t]he legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the sole source of the legal principles required for the jury's deliberations." *Id.* In determining whether a jury instruction is substantially accurate, we review the charge in its entirety and consider it as a whole, and we will not invalidate an instruction that "'fairly defines the legal issues involved in the case and does not mislead the jury.'" *Id.* (quoting *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). Moreover, "[j]ury instructions are not measured against [a] standard of perfection." *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 504 (Tenn. 2012) (first alteration in original) (quoting *City of Johnson City v. Outdoor W., Inc.*, 947 S.W.2d 855, 858 (Tenn. Ct. App. 1996)).

*Spencer v. Norfolk S. Ry. Co.*, 450 S.W.3d 507, 510 (Tenn. 2014). A trial court's judgment should not be reversed unless the improper denial of a request for a special jury instruction "has prejudiced the rights of the requesting party." *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 372 (Tenn. 2006). "It is not sufficient that refusal to grant the requested instruction *may* have affected the result, '[i]t must affirmatively appear that it did in fact do so.'" *Id.* (quoting *Otis*, 850 S.W.2d at 446).

As we have previously mentioned, the jury returned a verdict in favor of Dement, finding that Dement was not responsible for any damage to the Nemeths' property. In reaching such a verdict, the jury was not required to address the issue of compensatory damages. Because the jury never reached the question of damages, and in the absence of evidence that the judge's refusal to grant the requested instruction affected the result of the trial, we find the trial court did not err in denying the Nemeths' request for the proposed instruction.

CONCLUSION

For the foregoing reasons, we affirm the trial court in all respects. Costs of the appeal are assessed against the appellants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE