IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2018 Session

**CHRISTOPHER CREECH, ET AL. v. RMRTN CHATT, LLC**

Appeal from the Circuit Court for Dyer County
No. 2014-CV-56    William B. Acree, Senior Judge

_____

**No. W2017-01541-COA-R3-CV**

_____

This is a premises liability case.  Appellants sued Appellee, building owner, for negligence alleging that his injuries from a fall were due to an unsafe ladder on which he was standing to access Appellee's HVAC units.  Appellee denied all allegations and asserted comparative fault by one of the Appellants, Christopher Creech.  After various pre-trial motions, the case proceeded to trial.  At the close of trial, the trial court denied both motions for directed verdict.  The jury returned a verdict in favor of Appellee. Appellants appeal.  Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

James Bryan Moseley, Murfreesboro, Tennessee, for the appellants, Christopher Creech, and Liz Creech.

Alaric A. Henry, Elizabeth Roderick, Chattanooga, Tennessee, and Christopher L. Vescovo, Memphis, Tennessee, for the appellee, RMRTN CHATT, LLC.

**OPINION**

**I.  Background**

RMRTN Chatt, LLC ("Appellee") owns a building, which it leased to Toys-R-Us.[1] Toys-R-Us contracted with Appellant Christopher Creech (together with his wife Liz Creech, "Appellants"), for HVAC work on the building.  Mr. Creech was working on the

_____

[1] Toys-R-Us is not a party to this appeal.

HVAC unit at Appellee's building when the roof-access ladder, on which he was standing, detached from Appellee's building, causing Mr. Creech to fall and sustain injuries. The crux of Appellants' argument is that Appellee is at fault for Mr. Creech's injuries because it failed to properly inspect and maintain its ladder in good condition, thus resulting in the ladder being unsafe and unreasonably dangerous. At trial, Appellee presented evidence that it performed the proper inspections on the ladder and did not find any defects. Appellee also asserted that the actions of Mr. Creech were the proximate and legal cause of his injury. Specifically, Appellee presented evidence that Mr. Creech was familiar with the store and its roof-access ladder because he had previously inspected the HVAC units before beginning work. In fact, Mr. Creech testified that he had used the ladder several times the day of the accident and had not noticed any problem with the ladder.

On August 14, 2014, Appellants filed an Amended Complaint in the Circuit Court of Dyer County ("trial court"), alleging that Appellee negligently maintained its ladder and that Appellee's negligence was the direct and proximate cause of Mr. Creech's injuries.[2] On October 17, 2014, Appellee filed an answer, in which it denied liability and pled three affirmative defenses: (1) non-party fault; (2) Mr. Creech's comparative fault; and (3) negligence *per se* stemming from Mr. Creech's alleged violation of three Occupational Safety and Health Administration ("OSHA") regulations, 29 C.F.R. §§ 1926.10, 1926.20, and 1926.501.[3] On Appellants' motion for summary judgment, the trial court dismissed Appellee's non-party fault affirmative defense. The trial court denied summary judgment as to the two remaining affirmative defenses. Although, at trial, Appellee presented evidence regarding the OSHA violations, the trial court ultimately refused to instruct the jury as to Appellee's negligence *per se* defense and Mr. Creech's alleged violations of certain OSHA regulations.

Prior to trial, Appellants filed a motion in limine, asking the trial court to exclude Appellee's expert, Dr. Harold Deatherage, a licensed professional engineer. Appellants sought to exclude Dr. Deatherage's testimony *in toto*. Alternatively, Appellants sought to limit certain opinion testimony, which it anticipated Dr. Deatherage would offer at trial. The parties ultimately agreed that Dr. Deatherage was qualified to give expert testimony. Accordingly, the trial court allowed Dr. Deatherage's testimony but reserved ruling on Appellants' motion regarding the specific scope of his expert testimony.

Concerning Appellants' vocational expert, John McKinney, the trial court initially allowed him to testify regarding Mr. Creech's health after the accident, the impact the

---

[2] Appellants filed a Second Amended Complaint on January 25, 2017, the day the trial began, wherein Appellants incorporated their previous complaints and requested $6.75 million in compensatory damages.

[3] These regulations apply to construction and/or repair contracts and require an employer contractor (Mr. Creech) to maintain safe working conditions for his or her employees (Mr. Creech's employees).

accident had on Mr. Creech's ability to continue working, and that Mr. Creech was 100% disabled because of the accident. However, Appellee objected that no proper foundation was laid concerning Mr. McKinney's testimony about Mr. Creech's condition. The trial court sustained this objection and granted Appellee's request for a curative jury instruction striking all of Mr. McKinney's testimony and instructing the jury to not consider the testimony in its valuation of the case.

Both parties filed proposed jury instructions requesting certain special instructions, see *infra*. Relevant to this appeal, the trial court denied three of Appellants' proposed special instructions regarding a property owner's duty to use reasonable care and diligence in maintaining its property in a safe condition. In denying Appellants' requests, the trial court found that the special instructions were unnecessary because the Tennessee Pattern Jury Instructions sufficiently addressed the information requested in the special instructions.

The case was tried over six days. At the conclusion of all proof, Appellants moved for a directed verdict on Appellee's comparative fault affirmative defense. The trial court denied the motion and allowed the question of Mr. Creech's comparative fault to go to the jury. On January 31, 2017, the jury returned a verdict in favor of Appellee. The jury verdict form shows that, on the question, "Do you find the defendant to be at fault?," the jury answered "No." By order of February 23, 2017, the trial court entered judgment in favor of Appellee. Appellants filed a Motion for New Trial, which the trial court denied by order of July 10, 2017.

## II. Issues

Appellants raise four issues for review, which we restate as follows:

1. Whether the trial court erred in denying Appellants' motion for partial summary judgment as to Appellee's affirmative defenses of Mr. Creech's comparative fault and negligence *per se* as to Mr. Creech's alleged OSHA violations.

2. Whether the trial court erred in its rulings concerning the parties' respective experts, Dr. Harold Deatherage and John McKinney.

3. Whether the trial court erred in denying Appellants' motion for directed verdict.

4. Whether the trial court erred when it refused to issue Appellants' special jury instructions.

## III. Standard of Review

The standard of review when examining a jury verdict approved by the trial court

is whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d); ***Cooper v. Tabb***, 347 S.W.3d 207, 217 (Tenn. Ct. App. 2010). To determine whether material evidence supports the jury's verdict, this Court must: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." ***Barnes v. Goodyear Tire & Rubber Co.***, 48 S.W.3d 698, 704 (Tenn. 2000) (citing ***Crabtree Masonry Co., Inc. v. C & R Constr., Inc.***, 575 S.W.2d 4, 5 (Tenn. 1978)).

## IV. Analysis

### A. Partial Summary Judgment

Appellants first argue that the trial court erred in denying their motion for partial summary judgment as to Appellee's affirmative defenses. As discussed above, the trial court granted Appellants' motion regarding the defense of non-party fault, but denied the motion regarding the defenses of Mr. Creech's comparative fault and negligence *per se*. Nonetheless, the negligence *per se* defense was effectively dismissed as the trial court declined to instruct the jury regarding any OSHA violations by Mr. Creech. As to the remaining defense of Mr. Creech's comparative fault, following the denial of Appellants' partial summary judgment motion as to this defense, the trial court allowed the jury to consider and decide this issue. It is well settled that a "trial court's denial of the summary judgment [being] predicated upon the existence of a genuine issue of fact . . . is not reviewable where there has been a judgment rendered after a trial on the merits of the case." ***Mullins v. Precision Rubber Prod. Corp.***, 671 S.W.2d 496, 498 (Tenn. Ct. App. 1984) (citing ***Tate v. Monroe County***, 578 S.W.2d 642, 644 (Tenn. Ct. App. 1978). Accordingly, we will not address the question of whether the trial court erred in its ruling on the motion for partial summary judgment.

### B. Expert Witnesses

We review a trial court's decision regarding the admissibility of expert witness testimony under an abuse of discretion standard. As discussed by the Tennessee Supreme Court:

> Generally, questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion. ***McDaniel v. CSX Transportation, Inc.***, 955 S.W.2d 257, 263 (Tenn. 1997). We may not overturn the trial court's ruling admitting or excluding expert testimony unless the trial court abused its discretion. ***Id.*** at 263-64. A trial court abuses its discretion if it applies an incorrect legal standard or reaches an illogical or unreasonable decision that

- 4 -

causes an injustice to the complaining party. ***State v. Stevens***, 78 S.W.3d 817, 832 (Tenn. 2002).

***Brown v. Crown Equip. Corp.***, 181 S.W.3d 268, 273 (Tenn. 2005). In discussing the ***Brown*** decision, this Court has explained:

> The Court in ***Brown*** noted that the "objective" of the gatekeeping function is "to ensure that 'an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" ***Id.*** at 275 (quoting ***Kumbo Tire Co. v. Carmichael***, 526 U.S. 137, 152 (1999)). The ***Brown*** Court emphasized that, once admitted, the testimony of the expert "will be subject to vigorous cross-examination and countervailing proof" and that "the resolution of legitimate but competing expert opinions are matters entrusted to the trier of fact." ***Brown***, 181 S.W.3d at 275 (citations omitted). Based on these considerations, the Court in ***Brown*** determined that the trial court had abused its discretion in excluding the testimony of the plaintiff's proffered experts. ***Id.*** at 281.
>
> Subsequent Tennessee Supreme Court decisions applying ***Brown*** have likewise emphasized that an expert's testimony will be subjected to forceful cross-examination, indicating that trial courts should be reluctant to exclude the testimony of an expert because of his or her opinion. For example, in ***State v. Scott***, 275 S.W.3d 395 (Tenn. 2009), the Court noted that the trial court's role as gatekeeper "is not unconstrained" and stated that a party proffering the testimony of an expert "need not establish that the expert testimony is correct, only that the expert testimony 'rests upon 'good grounds.''" ***Id.*** at 404 (citations omitted). *See also **Shipley v. Williams***, 350 S.W.3d 527, 559-60 (Tenn. 2011).

***Wells v. Illinois Cent. R. Co.***, No. W2010-01223-COA-R3-CV, 2011 WL 6777921, at *7 (Tenn. Ct. App. Dec. 22, 2011), *perm. app. denied* (Tenn. Aug. 16, 2012). With the foregoing in mind, we turn to review the trial court's rulings as to Dr. Deatherage and Mr. McKinney.

### 1. Dr. Harold Deatherage

As noted above, Appellants agreed that Dr. Deatherage was qualified to give expert testimony. However, on June 1, 2016, Appellants filed a motion in limine, in which they asked the trial court to limit the scope of his testimony. Specifically, Appellants argued that Dr. Deatherage did not have a factual basis for his opinion "that the ladder would have been noticeably loose prior to failure." Appellants claim that Dr.

Deatherage's opinions failed the ***McDaniel*** test in that they were unsupported and unreliable. Specifically, Appellants assert that Dr. Deatherage: (1) did not perform any testing to reach his opinion; (2) did not rely on testing performed by others in reaching his opinion; (3) did not rely on scientific literature or authority in reaching his opinion; and that (4) his opinion only applied to this litigation.[4] By order of June 30, 2016, the trial court reserved ruling on the scope of Dr. Deatherage's testimony.

Having reserved ruling on Appellants' motion in limine to limit Dr. Deatherage's testimony, it was incumbent upon Appellants to lodge timely specific objections during the trial concerning the substance and/or scope of Dr. Deatherage's testimony. Tenn. R. Evid. 103.[5] The record shows that, during Dr. Deatherage's testimony, Appellants lodged three objections, which we review in turn.

---

[4] The ***McDaniel*** factors are:

> (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether ... the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

***McDaniel***, 955 S.W.2d at 265.

Importantly, we note that the ***McDaniel*** factors provide a *non-exclusive* list of factors. ***McDaniel***, 955 S.W.2d at 265. Furthermore, in ***Brown***, the Tennessee Supreme Court "identified other nondefinitive factors that a trial court may consider in assessing the reliability of an expert's methodology." ***Brown***, 181 S.W.3d at 274. These factors include: (1) the expert's qualifications for testifying on the subject at issue; and (2) the connection between the expert's knowledge and the basis for the expert's opinion. *Id.* at 274-75. With regards to the second factor, the ***Brown*** Court explained that it is

> important particularly when the expert's opinions are based upon experience or observations as these areas are not easily verifiable. ***Stevens***, 78 S.W.3d at 834. A trial court, however, may conclude that an expert's opinions are reliable "if the expert's conclusions are sufficiently straightforward and supported by a 'rational explanation which reasonable [persons] could accept as more correct than not correct.'" *Id.* (quoting ***Wood v. Stihl***, 705 F.2d 1101, 1107-08 (9th Cir. 1983)).

***Brown***, 181 S.W.3d at 275.

[5] Tennessee Rule of Evidence 103 provides in part:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context . . .

Appellants first objected to Dr. Deatherage's testimony as follows:

**A:** Then after a period of time, I acquired a construction company or two other guys and I did and we ran that company until 1985. And when the banks failed and the economy in Knoxville went in the tank, why I went back to school and got my PhD in civil engineering and had not intended to stay in Knoxville but, the job opportunity was there to stay and teach and so I did so. And I was responsible for the construction program at the University of Tennessee.

**Appellants' Attorney:** I don't mean to interrupt, but we can stipulate to his qualifications. If that speeds things up a little bit. We do have an issue with some foundational issues with opinions that we had a motion for, but qualification-wise, we don't have an issue with that.

Appellants' second objection to Dr. Deatherage's testimony was similar to the first:

**Q:** Your Honor, at this time I'd tender Dr. Deatherage as an expert— professional engineer, structural engineer and forensic engineer.

**Appellants' Attorney:** Again, Your Honor, we don't have any objection to his qualifications. We do have an objection to foundation for some of the opinions he intends to give.

**The Court:** I understand.

These two objections were made during portions of Dr. Deatherage's testimony where he was merely stating his qualifications, which Appellants conceded were sufficient to allow Dr. Deatherage to give expert testimony. At this point in Dr. Deatherage's testimony, objection to foundation for his opinions is neither timely nor specific. The objection to foundation concerning opinions Dr. Deatherage "intends to give" is premature until such testimony is offered. Accordingly, we cannot conclude that the trial court erred in overruling these objections at the time they were made.

Appellants' third objection is more specific:

**Q:** In terms of the reviewing of the data and the access seen in this particular case, what – is there an OSHA requirement as it relates to leaving

---

Tenn. R. Evid. 103(a)(1).

the latch or hatch door open to the roof that employees are supposed to follow?

**Appellants' Attorney:** Your Honor, could we approach?

(Whereupon, bench conference was held, to-wit:)

**Appellants' Attorney:** This is one of the issues we raised in our motion in limine about him giving some kind of opinion as to causation. There's no relevance to the hatch being open unless it actually caused the ladder failure or caused some type of injury to Mr. Creech. And when we took his deposition he had to admit that he's not giving causation opinion about any medical issue or anything like that. And he's admitted that the hatch being open didn't cause this ladder failure.

**Appellee's Attorney:** Your Honor, a couple of things from what evidence has been in the record. First of all, there's a bunch of evidence in the record from the medical testimony about him having to twist and turn, about him being in an awkward position because he's afraid of falling in. Plus, in terms of general safety issues it is a general safety issue that's reflective of this, you know, company relating to this and he specifically has said in the record about being concerned about falling down that hole.

**The Court:** I think your question was whether or not having that hatch open is an OSHA violation.

**Appellee's Attorney:** I think if there's an OSHA application that applies for that hatch being open. I think that was - -

**The Court:** Well, the last – the last expert witness testified that it was.

**Appellants' Attorney:** So then it's cumulative, I suppose.

***

**The Court:** . . . Objection overruled. He can – he can testify as to what the regulation has to say about that.

(Whereupon, bench conference was concluded.)

**Q:** Dr. Deatherage, what does the regulation have to say about this open roof hatch?

- 8 -

**A:** You want me to read it?

**Q:** Sure.

**A:** "Each employee on a walking or working surface shall be protected from falling through holes, including skylights, more than six foot above lower levels by personal fall [arrest] system[s], covers, or [guardrails] erected around such holes." So you can't have an open opening on a walking surface or a roof without protecting it. One of the way[s] to protect it is to close the lid or the obvious way to protect it I guess is to close the lid.

The substance of Appellants' third objection is whether leaving a hatch door open, which would violate OSHA regulations, was relevant to the ladder falling. Accordingly, the objectionable testimony goes directly to Appellee's defense of negligence *per se*. As discussed above, the jury was never charged concerning this defense. Thus, even if we assume, *arguendo*, that the trial court should have sustained the objection, any error was cured by the trial court's refusal to instruct the jury as to Appellee's negligence *per se* defense. In this regard, any error concerning the trial court's ruling on the objection would be harmless. Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

### 2. John McKinney

As noted above, Mr. McKinney testified that, as a result of the accident, Mr. Creech is 100% disabled and unemployable. On Appellee's objection to this testimony, the trial court ruled that Mr. McKinney did not lay a proper foundation for his conclusion concerning Mr. Creech's disability and instructed the jury to disregard all of Mr. McKinney's testimony.

Of course, Mr. McKinney's testimony concerning Mr. Creech's disability is relevant to the issue of compensation only, not liability. Here, the jury ultimately found no liability on Appellee's part. Accordingly, even if we allow, *arguendo*, that the trial court erred in instructing the jury to ignore this portion of Mr. McKinney's testimony, such error would be harmless in view of the jury's ultimate verdict. Tenn. R. App. P. 36(b).

### C. Directed Verdict

At the close of trial, Appellants moved for directed verdict.[6] Tennessee Rule of

---

[6] Appellants moved for directed verdict on negligence *per se* even though the trial court explained

- 9 -

Civil Procedure 50.01 provides:

> A motion for a directed verdict may be made at the close of the evidence offered by an opposing party or at the close of the case. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

The trial court denied the motion, and Appellants appeal. From our review, Appellants did not raise the denial of the motion for directed verdict in their motion for new trial. Rule 3 of the Tennessee Rules of Appellate Procedure provides, in part, that

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, **unless the same was specifically stated in a motion for a new trial**; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e) (emphasis added). This Court faced a similar scenario in *Mires v. Clay*, 3 S.W.3d 463, 468 (Tenn. Ct. App. 1999). In *Mires*, a defendant moved for directed verdict at the close of plaintiff's proof and renewed the motion at the close of all proof. However, the defendant failed to file a post-trial motion addressing the denial of the motion for directed verdict. In *Mires*, we explained:

> This Court has previously addressed this issue in *Cortez v. Alutech, Inc.*, 941 S.W.2d 891 (Tenn. App. 1996). In *Cortez*, we noted that when the alleged error is the failure of the trial court to grant a directed verdict, either a motion for a new trial or a post-trial motion seeking entry of judgment in accordance with a motion for directed verdict made at trial (judgment n.o.v.) is sufficient to preserve the issue for appeal. *Id.* at 894-95. Failure to file either of these post-trial motions, however, denies "the trial judge the opportunity to consider or reconsider alleged errors committed during the course of trial" and precludes appellate review of that issue. *Id.* at 894-96. The rationale for this holding is supported by Rule 36(a) T.R.A.P. which

it was not charging negligence *per se* to the jury.

- 10 -

provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

*Mires v. Clay*, 3 S.W.3d 463, 468 (Tenn. Ct. App. 1999).  Having failed to raise the denial of their motion for directed verdict in its motion for new trial, Appellants waived this issue.  Tenn. R. App. P. 3(e).

## D.  Jury Instruction

Appellants also appeal the trial court's denial of three of their proposed special jury instructions.  The special instructions concerned the duty of a property owner to keep its property in a reasonably safe condition.  "Whether a jury instruction is erroneous is a question of law and is[,] therefore[,] subject to de novo review with no presumption of correctness."  *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011) (citing *Solomon v. First Am. National Bank of Nashville*, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989).  Regarding jury instructions, this Court has previously explained:

> It is the trial court's duty to instruct the jury on "every factual issue and theory of the case presented by the parties." *Ricketts v. Robinson*, 169 S.W.3d 642, 646 (Tenn. Ct. App. 2004) (citing *Cole v. Woods*, 548 S.W.2d 640, 642 (Tenn. 1977)). This Court reviews the jury charge in its entirety to determine whether the trial judge committed reversible error. Jury instructions are not measured against the standard of perfection. The charge will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." *Id.* Furthermore, a particular instruction must be considered in the context of the entire charge. *Id.* (citing *City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855, 858 (Tenn. Ct. App. 1996)). Whether a jury instruction is erroneous is a question of law and is, therefore, subject to *de novo* review with no presumption of correctness. *Solomon v. First Am. National Bank of Nashville*, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989). The legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the sole source of the legal principles required for the jury's deliberations. Therefore, a trial court is under a duty to impart "substantially accurate instructions concerning the law applicable to the matters at issue." *Hensley v. CSX Transp., Inc.*, 310 S.W.3d 824, 833 (Tenn. Ct. App. 2009) (quoting *Bara v. Clarksville Mem'l Health Sys., Inc.*, 104 S.W.3d 1, 3-4 (Tenn. Ct. App. 2002)). When considering whether a trial court committed prejudicial error in a jury instruction, it is our duty to review the charge in its entirety and to consider it as a whole. The instruction will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.

- 11 -

1992). The judgment of a trial court will not be set aside based on an erroneous jury instruction unless it appears that the erroneous instruction more probably than not affected the judgment of the jury. Tenn. R. App. P. 36(b); *Gorman v. Earhart*, 876 S.W.2d 832, 836 (Tenn. 1994).

*Monypeny*, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at *19 (Tenn. Ct. App. Apr. 1, 2015).

Here, Appellants requested the following special jury instructions:

Special Jury Instruction No. 1:

A property owner has a duty to use reasonable care to inspect its property to discover dangerous or unsafe conditions. An [sic] property owner also has a duty to use reasonable care and diligence in maintaining its property in a safe condition. Likewise, a property owner owes a duty to contractors and employees of contractors to see that the employee has a reasonably safe place in which to work.

The trial court denied Appellants' instruction, stating:

**THE COURT:** The plaintiff's special request number 1 is denied. I think that the, I think that the law will be adequately covered under the pattern jury instructions and the charge that I've prepared. Also, I think it's cumulative – that the danger [with] cumulative instruction is that it tends to over emphasi[ze] one particular aspect of the case, which I think this will happen.

The second special jury instruction Appellants requested states:

Special Jury Instruction No. 2:

The duty of the owner or occupier of the land arises from a position of control which the person in possession occupies; he is the person normally best able to prevent any harm to others.

The trial court denied Appellants' second proposed instruction, stating:

**THE COURT:** [Appellee's counsel] has been arguing throughout the case that the person best able to prevent any harm in this case was Mr. Creech himself because he was the last one on the ladder. I'm not stating, stating that to say I agree with him or I don't agree with him, but I don't think

- 12 -

under the circumstances it would be an appropriate charge. I'm not going to charge that one either.

The final special jury instruction Appellants requested states:

Special Jury Instruction No. 3:

A property owner who either knew or should have known of a dangerous condition on his premises has a duty to either repair or remove the condition or help others avoid injury by warning them of the condition if the condition cannot reasonably be removed or repaired.

The trial court denied Appellants' final proposed instruction, stating:

**THE COURT:** Instruction says in part, "to recover from an injury caused by an unsafe condition of the property, the plaintiff must show that the defendant either created the unsafe condition or knew of it long enough to have corrected it or given adequate warning of it before the plaintiff's injury" and so forth and so on. I think that's covered it. Number 3 is denied.

Concerning a property owner's duty, the Tennessee Civil Pattern Jury Instructions ("T.P.I.") provide:

**T.P.I.—CIVIL 9.01 Duty of Owners, Occupants or Lessors of Premises**

One who owns, occupies or leases property is under a duty to use ordinary care, which is the care that ordinarily careful persons would use to avoid injury to themselves or others under the same or similar circumstances. There is no duty to guarantee the safety of those entering upon the property.

You should consider all the surrounding circumstances in deciding if the defendant used such care.

T.P.I.—CIVIL 9.01 Duty of Owners, Occupants or Lessors of Premises, Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 9.01 (2017 ed.).

**T.P.I.—CIVIL 9.02 Premises—Unsafe Condition**

To recover for an injury caused by an unsafe condition of the property, the plaintiff must show that the defendant either created the unsafe condition or knew of it long enough to have corrected it *[or given adequate warning of it]* before plaintiff's injury, or that the unsafe condition existed long enough

- 13 -

that the defendant, using ordinary care, should have discovered and corrected *[or adequately warned of]* the unsafe condition. An unsafe condition is a condition which creates an unreasonable risk of harm.

T.P.I.—CIVIL 9.02 Premises—Unsafe Condition, Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 9.02 (2017 ed.).

"When considering whether a trial court committed prejudicial error in a jury instruction, it is our duty to review the charge in its entirety and to consider it as a whole." **Monypeny**, 2015 WL 1541333, at \*19. Trial courts may give special instructions but "need not give a special instruction whose substance is already covered in the general charge." **Mitchell v. Smith**, 779 S.W.2d 384, 390-91 (Tenn. Ct. App. 1989) (citing **Jack M. Bass & Co. v. Parker**, 343 S.W.2d 879, 884 (1961); **Austin v. City of Memphis**, 684 S.W.2d 624, 636 (Tenn. Ct. App. 1984)). Having denied these three proposed instructions, the trial court ultimately instructed the jury on the issue of duty as follows:

In deciding this case you must determine the fault, if any, of each of the parties. If you find more than one party . . . [is] at fault, you would then compare the fault of both parties. To do this you need to know the definition of fault.

A party is at fault if you find the party was negligent and that the negligence was the cause in fact, the legal cause of the injury or damage which a claim has made.

Fault has two parts: Negligence and causation. Negligence is the failure to use reasonable care. It is either doing something that a reasonably careful person would not do or the plaintiff would do, something that a reasonably careful person would do, under circumstances similar to those shown by the evidence.

The mere happening of an injury or accident does not in and of itself prove negligence. A person may assume that every other person will use reasonable care unless the circumstances indicate the contrary to a reasonably careful person.

One who owns, occupies or leases property is under a duty to use ordinary care, which is the care that an ordinary, ordinarily careful person would use to avoid injury to themselves or others of the same or similar circumstances. There is no duty to guarantee the safety of those on your property.

You should consider all of the surrounding circumstances and decide if the defendant used such care.

To recover for an injury caused by an unsafe condition of a property, the plaintiff must show that the defendant either created the unsafe condition or knew of it long enough to have corrected it or given adequate warning of it before the plaintiff's injury or that the unsafe condition existed long enough that the defendant using ordinary care should have discovered and corrected it or adequately warned of the unsafe condition. An unsafe condition is a condition which creates an unreasonable risk of harm.

The gravamen of this lawsuit is negligence, and the primary focus of the proposed special jury instructions concerns the first element of negligence, i.e. the duty of care a property owner owes to keep its premises in a reasonably safe condition. The jury instructions the trial court gave are essentially verbatim recitations of T.P.I. 9.01 and 9.02. The requested special jury instructions are cumulative of the information set out in the Pattern Jury Instructions. As such, the special jury instructions were unnecessary to the jury's understanding and application of the relevant law. Therefore, we cannot conclude that the trial court erred in denying the requested special instruction.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's rulings and judgment in this case. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellants, Christopher Creech, Liz Creech, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE