IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 4, 2026

## JOHN WILLIAM OWENS ET AL. v. MEREDITH ELIZABETH OWENS

**Appeal from the Circuit Court for Bradley County**
**No. V-22-170, V-21-417          J. Michael Sharp, Judge**
_____

**No. E2025-00483-COA-R3-CV**
_____

In this matter involving alleged violations of federal and state wiretapping statutes, evidence was presented to a jury during a two-day trial. Following the conclusion of the trial, the jury deliberated and ultimately found in favor of the defendant. The trial court entered judgment for the defendant, and the plaintiffs filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. The trial court denied the motion, and the plaintiffs timely appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. MARK WARD, SP.J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellants, John William Owens, Melanie Hollis, Lydia Hollis, and Natalie Hollis.

Bob E. Lype and Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Meredith Elizabeth Owens.

## OPINION

### I. Factual and Procedural Background

On August 13, 2021, Lydia Hollis, Natalie Hollis, and Melanie Hollis, individually and as next friend for H.H. and C.H. (collectively, "the Hollises"), filed a complaint against the defendant, Meredith Owens, in the Bradley County Circuit Court ("trial court"). In their complaint, the Hollises alleged that Ms. Owens had violated state and federal laws prohibiting wiretapping and the knowing observation of individuals without their consent.

The Hollises averred that these acts had occurred in their home and in other places where they maintained an expectation of privacy. The Hollises also averred that Ms. Owens had used spyware devices that could capture video with sound and images and that she had displayed these videos to third parties. In addition, the Hollises stated that the minor children, H.H. and C.H., were severely disabled and that certain videos showed one of the children not fully clothed. According to the Hollises, Ms. Owens had also posted photographs of the Hollises on her Instagram page, sent a private video depicting Lydia Hollis to Ms. Hollis's university in an attempt to cost her a scholarship, and publicly made derogatory remarks about Lydia Hollis. The Hollises sought an injunction ensuring the destruction of any recordings or photographs in Ms. Owens's possession and prohibiting the further dissemination of same, an award of compensatory and punitive damages, an award of costs and attorney's fees, and pre- and post-judgment interest.

On January 31, 2022, the Hollises filed an amended complaint in response to a motion for more definite statement filed by Ms. Owens. The Hollises therein stated that Ms. Owens had acknowledged during her divorce proceedings that she had photographs and recordings of her husband, John Owens, "engaging in inappropriate conduct, most likely with some minor girls as well as married women" and of Mr. Owens "entertaining his girlfriend" and "her teenage daughters" both at Ms. Owens's home and at "his girlfriend's house." The Hollises averred that spyware devices were used in their home, the home of a friend, and in a friend's vehicle to capture images and audio. The Hollises further claimed that Ms. Owens had shared these improperly obtained photographs and recordings with her attorney.

In addition, the Hollises stated that Ms. Owens had created an Instagram page titled "@loserscheaters" in March 2020 and had posted photographs of Lydia Hollis, stating "all three of you deserve in return every evil thing that you have intentionally done to others and more." The Hollises also alleged that Ms. Owens had sent, or caused to be sent, a letter to Cleveland State University, where Lydia Hollis was pursuing her education on an athletic scholarship, with the intent of jeopardizing that scholarship.

On February 9, 2022, Ms. Owens filed an answer and denied several of the allegations contained in the amended complaint. Ms. Owens asserted that certain allegations were so vague that she could not respond, and she affirmatively averred that the Hollises would have no expectation of privacy in Ms. Owens's residence. By way of explanation, Ms. Owens stated that she had purchased a motion-activated recording device in the nature of a "nanny cam," which appeared and functioned as a normal cellular telephone charger. Ms. Owens reported that she had left the device in her home when she took her children on vacation in June 2019, and Mr. Owens had, unbeknownst to her, engaged in an affair with Melanie Hollis and had taken the device with him in his vehicle, to Ms. Hollis's home, and back to the Owens residence, capturing recordings in all of those places. Accordingly, Ms. Owens denied that the recordings were intentionally captured by her and claimed that Mr. Owens's act of taking the device was an intervening cause.

Although Ms. Owens acknowledged that she had disclosed the existence and contents of the videos to her divorce counsel, she denied creating an Instagram page, sending a letter to Cleveland State, or publishing the video contents to any other person. Ms. Owens also asserted several affirmative defenses and requested that the complaint be dismissed.

Ms. Owens concomitantly filed a motion to dismiss, asserting that the Hollises had failed to state a claim upon which relief could be granted and had failed to state their claims with sufficient specificity. Ms. Owens also asserted that the actions forming the basis for the complaint were known to the Hollises in 2019 but that the complaint had not been filed until August 2021. Ms. Owens thus argued that certain of the claims were subject to dismissal by reason of a one-year statute of limitations. Ms. Owens also filed a motion to strike certain portions of the amended complaint and exhibits attached to the complaint as containing "immaterial, impertinent or scandalous matter."

On April 4, 2022, Mr. Owens filed a complaint against Ms. Owens in the trial court, claiming invasion of privacy and violations of the wiretapping statutes. In addition to the allegedly intentional recordings of Mr. Owens by the recording device, Mr. Owens also asserted that Ms. Owens had, unbeknownst to him, attached tracking devices to his vehicles and monitored his movements in those vehicles. Mr. Owens claimed that he had an expectation of privacy in his home and in his vehicles. As such, Mr. Owens sought an injunction against Ms. Owens, awards of compensatory and punitive damages, and attorney's fees. Ms. Owens filed an answer denying the material allegations of Mr. Owens's complaint. Thereafter, the trial court entered an order consolidating the actions filed by the Hollises and Mr. Owens (collectively, "Plaintiffs").

On August 29, 2024, Plaintiffs filed a notice of voluntary nonsuit of the following claims: (1) violation of Tennessee Code Annotated § 39-13-606 (involving Ms. Owens's use of a tracking device), (2) intentional/negligent infliction of emotional distress, (3) defamation, and (4) common law invasion of privacy. The trial court later entered an order dismissing those claims without prejudice. On September 20, 2024, Ms. Owens filed a motion for summary judgment or, in the alternative, for partial summary judgment, asserting that no genuine issue of material fact existed as to Plaintiffs' remaining claims. Ms. Owens posited that only the claims based on state and federal wiretapping statutes remained after the other claims had been nonsuited, and she argued that she was entitled to summary judgment on the wiretapping claims. Ms. Owens filed an affidavit and a statement of undisputed material facts in support of her summary judgment motion.

On September 26, 2024, Plaintiffs likewise filed a "Motion for Summary Judgment and/or Partial Summary Judgment." Plaintiffs asked the trial court to enter a judgment in their favor on their claims that Ms. Owens had violated state and federal wiretapping laws. Plaintiffs filed a statement of undisputed material facts in support of the motion, along with transcript excerpts and other exhibits. Ms. Owens subsequently filed a response in

opposition to Plaintiffs' motion, and Plaintiffs filed a response to Ms. Owens's statement of undisputed material facts.

On November 7, 2024, the trial court entered an order regarding the competing summary judgment motions. The court credited Ms. Owens's argument that she had never placed the recording device in the Hollises' home, and the court dismissed the wiretapping claims concerning the recordings made in that home. However, regarding the Owenses' home, the court found that genuine issues of material fact existed respecting Ms. Owens's intent and knowledge when placing the recording device in that home. The court therefore denied summary judgment on those claims. The court also denied summary judgment on the issue of punitive damages, citing issues of material fact concerning the reckless or willful nature of Ms. Owens's conduct.

Respecting Plaintiffs' summary judgment motion, the trial court found that genuine issues of material fact existed as to "what [Ms. Owens] knew or didn't know regarding the device, and whether or not it would record both audio and video." The court thus found that the question of Ms. Owens's intent would need to be determined by the jury. The court held the remainder of the motion in abeyance pending Plaintiffs' presentation of proof at trial.

The trial court conducted a trial by jury on November 12 and 13, 2024. Ms. Owens and Mr. Owens were the only witnesses who testified. Following the presentation of evidence, the jurors deliberated and unanimously found that Ms. Owens had not intentionally intercepted, used, or disclosed Plaintiffs' communications. Accordingly, on November 26, 2024, the trial court entered a final judgment order in Ms. Owens's favor as to Plaintiffs' claims.

On December 26, 2024, Plaintiffs filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. Plaintiffs argued that the jury's verdict was against the weight of the evidence, that the jury was tainted by repeated references to Ms. Owens's prior divorce matter, and that the jury charge was improper or incomplete. Ms. Owens opposed the motion. On March 11, 2025, the trial court entered an order denying the motion. The court affirmed and approved the jury's verdict, which was rendered after the jury "heard and considered all of the evidence and arguments by each of the parties and their respective counsel." The court also determined that its evidentiary rulings were sound, that Plaintiffs had not demonstrated that they had made contemporaneous objections to the rulings, and that the court's evidentiary rulings did not form a basis for setting aside the jury's verdict. Concerning the jury instructions, the court determined that the instructions given were substantially accurate and not misleading, having been based primarily on Plaintiffs' proposed instructions. Ultimately, the court found that the jury's verdict was supported by the evidence presented. Plaintiffs timely appealed.

- 4 -

## II.  Issues Presented

Plaintiffs present the following issues for this Court's review, which we have restated slightly:

1.  Whether the trial court erred by denying Plaintiffs' motions for summary judgment, directed verdict, and judgment notwithstanding the verdict.

2.  Whether the trial court erred in its provision of the jury instructions.

## III.  Standard of Review

Concerning the denial of a motion for a directed verdict, the following standard of review applies:

> In ruling on a motion for directed verdict, trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence.  *Eaton v. McLain,* 891 S.W.2d 587, 590 (Tenn. 1994).  A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence.  *Id.*  Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict.  *Sauls v. Evans,* 635 S.W.2d 377, 379 (Tenn. 1982).

*Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003).  The same standard applies to a motion for judgment notwithstanding the verdict.  *Mairose v. Fed. Exp. Corp.*, 86 S.W.3d 502, 511 (Tenn. Ct. App. 2001) ("In ruling on a motion for a judgment notwithstanding the verdict, the standard applied by both the trial court and the appellate court is the same as that applied to a motion for a directed verdict made during the trial.").

Respecting review of a trial court's jury charge, our Supreme Court has previously explained:

> Whether a jury instruction is erroneous is a question of law and is therefore subject to de novo review with no presumption of correctness.  *Solomon v. First Am. National Bank of Nashville*, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989).  The legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the sole source of the legal principles required for the jury's deliberations.  Therefore, a trial court is under a duty to impart "substantially accurate instructions concerning the law applicable to the matters at issue."  *Hensley v. CSX Transp., Inc.*, 310 S.W.3d 824, 833

(Tenn. Ct. App. 2009) (quoting *Bara v. Clarksville Mem'l Health Sys., Inc.*, 104 S.W.3d 1, 304 (Tenn. Ct. App. 2002)). When considering whether a trial court committed prejudicial error in a jury instruction, it is our duty to review the charge in its entirety and consider it as a whole, and the instruction will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). The judgment of a trial court will not be set aside based on an erroneous jury instruction unless it appears that the erroneous instruction more probably than not affected the judgment of the jury. Tenn. R. App. P. 36(b); *Gorman v. Earhart*, 876 S.W.2d 832, 836 (Tenn. 1994).

*Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011). With regard to review of a jury's verdict that has been approved by the trial court, this Court has clarified:

Our review of the trial court's approval of a jury verdict is based on a "material evidence" standard. Under this standard, "appellate courts may only review the record to determine whether it contains material evidence to support the jury's verdict." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999) (citing Tenn. R. App. 13(d)); *see Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000). As with the standard for reviewing the denial of a motion for a j.n.o.v., this Court must "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *see also Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988). The "material evidence" inquiry actually resolves both issues, because "[i]f there is material evidence to support the jury's findings, then, of necessity, granting a directed verdict [or j.n.o.v.] for the losing party would have been improper because the evidence permitted reasonable minds to reach a conclusion different from that asserted by the losing party." *Potter* [*v. Ford Motor Co.*], 213 S.W.3d [264,] 268 [(Tenn. Ct. App. 2006)] (quoting *In re Estate of Brindley*, No. M1999-02224-COA-R3-CV, 2002 WL 1827578, at *2 (Tenn. Ct. App. Aug.7, 2002)).

*In re Estate of Blackburn*, 253 S.W.3d 603, 613 (Tenn. Ct. App. 2007).

IV. Law Applicable to Claims

To accurately analyze Plaintiffs' issues, we must first examine the law applicable to Plaintiffs' claims. Plaintiffs first alleged a violation of 18 U.S.C. § 2510, *et seq.*, known as the "Wire and Electronic Communications Interception and Interception of Oral Communications Act" ("Federal Wiretap Statute"). The Federal Wiretap Statute

specifically prohibits any person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication"; "intentionally disclos[ing], or endeavor[ing] to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection"; or "intentionally us[ing], or endeavor[ing] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." *See* 18 U.S.C. § 2511 (a), (c), or (d). The statute provides for a private right of action and an award of civil damages for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." *See* 18 U.S.C. § 2520(a).

Plaintiffs also averred that Ms. Owens had violated Tennessee's wiretap statute, which mirrors the language of the Federal Wiretap Statute at 18 U.S.C. § 2511 (a), (c), and (d), and provides that an offense occurs when a person "intentionally intercepts" an oral communication or "intentionally discloses" or "intentionally uses" the "contents" of such intercepted oral communication. *See* Tenn. Code Ann. § 39-13-601(a)(1)(A), (C), and (D) (West June 10, 2011, to May 28, 2024) ("Tennessee Wiretap Statute"). At the time this lawsuit was filed, Tennessee Code Annotated § 39-13-603 provided for a private right of action and imposition of civil damages, including punitive damages, for the intentional interception, disclosure, or use of oral communications.[1]

During trial, much of the evidence focused on whether Ms. Owens intentionally intercepted oral communications and whether she intentionally used or disclosed the contents of intercepted oral communications in violation of the above-described state and federal wiretap statutes. Accordingly, we emphasize the following definitions from the Federal Wiretap Statute:

(2)     "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

* * *

(4)     "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device[;]

---

[1] Tennessee Code Annotated § 39-13-603 was repealed by the legislature in 2024.

\* \* \*

(8)     "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication[.]

18 U.S.C. § 2510.  Although the word "intentionally" is not expressly defined in the Federal Wiretap Statute, federal courts have made clear that "inadvertent interceptions" do not result in liability.  *See, e.g.*, *City of Grand Rapids, Mich. v. Grand Rapids Police Officers Ass'n*, 818 Fed. Appx. 387, 390 (6th Cir. 2020); *Klumb v. Goan*, 884 F. Supp. 2d 644, 660 (E.D. Tenn. 2012).  Moreover, federal courts have ruled that the passive act of listening to an intercepted communication does not constitute a "use" of that communication.  *See Dorris v. Absher*, 179 F.3d 420, 426, (6th Cir. 1999).

The Tennessee Wiretap Statute contains the same language as the Federal Wiretap Statute requiring intent with regard to interception, use, and disclosure of the contents of oral communications.  *See* Tenn. Code Ann. § 39-13-601(a)(1)(A), (C), and (D).  This Court has affirmed that the language of the statute requires proof of an intent to record the conversation of others for a violation of the statute to occur.  *See McDaniel v. McDaniel*, No. E2009-00447-COA-R3-CV, 2010 WL 2134146, at \*5 (Tenn. Ct. App. May 27, 2010).  Moreover, Tennessee Code Annotated § 40-6-303 (West July 9, 2012, to current) provides definitions applicable to the Tennessee Wiretap Statute.  For example, our legislature has defined "contents" as including "any information concerning the substance, purport or meaning of that communication[.]"  Tenn. Code Ann. § 40-6-303 (4).  In addition, as this Court has previously instructed:

The legislature defines an oral communication as "any oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation[.]" Tenn. Code Ann. § 40-6-303(14).  The legislature defines intercept as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device[.]" Tenn. Code Ann. § 40-6-303(11).

*Ledford v. Sneed*, No. E2018-00904-COA-R3-CV, 2020 WL 2299770, at \*3 (Tenn. Ct. App. May 8, 2020).

Finally, federal courts have noted that "[b]ecause the Tennessee Wiretap Act (TWA) is . . . identical to the federal Wiretap Act and there is a dearth of Tennessee law interpreting the TWA, courts have relied upon interpretations of the federal Wiretap Act in order to interpret the TWA."  *Klumb*, 884 F. Supp. 2d at 660-61 (citing *Cardinal Health*

*414, Inc. v. Adams*, 582 F. Supp. 2d 967, 979 (M.D. Tenn. 2008); *Hayes v. Spectorsoft Corp.*, 2009 WL 3713284, at *9 (E.D. Tenn. Nov. 3, 2009)).

## V. Denial of Motions

Plaintiffs posit that the trial court erred by denying their motions for partial summary judgment, directed verdict, and judgment notwithstanding the verdict. We will address each of these arguments in turn.

Regarding the trial court's denial of Plaintiffs' motion for partial summary judgment, this Court has previously declared: "When the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits." *Hobson v. First State Bank*, 777 S.W.2d 24, 32 (Tenn. Ct. App. 1989). *See In re Estate of Blackburn*, 253 S.W.3d at 611 ("[T]he denial of summary judgment because of genuine factual disputes is not appealable after a trial on the merits.") (quoting *Oliver v. Hydro-Vac Servs., Inc.*, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1994)). Here, the trial court denied Plaintiffs' summary judgment motion based on the existence of genuine issues of material fact concerning Ms. Owens's knowledge and intent when purchasing and utilizing the recording device. We are therefore unable to review the court's denial of Plaintiffs' summary judgment motion because the case proceeded to a trial on the merits and to determination by a jury.

Concerning the trial court's denial of Plaintiffs' motions for directed verdict and for judgment notwithstanding the verdict, we reiterate that when reviewing a ruling on a motion for directed verdict, we must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence. *Id.* The same standard applies to a motion for judgment notwithstanding the verdict. *Mairose*, 86 S.W.3d at 511.

Reviewing the evidence adduced at trial pursuant to the applicable standard of review, we conclude that the trial court properly denied both motions. During trial, Ms. Owens testified that she had purchased the recording device during a difficult time in her marriage to Mr. Owens, following his admission of an affair with Melanie Hollis. During the first part of April 2019, Mr. Owens told Ms. Owens that he was no longer seeing Ms. Hollis and that they had broken up. However, Ms. Owens recounted that Mr. Owens's behavior during that timeframe was erratic and that she often did not know his whereabouts. In late April 2019, after being away from the marital residence for a few days, Ms. Owens described finding things in the home indicating the presence of another female. Because she was later scheduled to travel with the parties' children to Florida, leaving Mr. Owens alone in the home, Ms. Owens stated that she wanted to procure a video

device in the nature of a "nanny cam" to determine what was occurring at her residence while she was gone.

Ms. Owens described searching for such devices on the internet to see what was available. Although she was unable to remember the name of the store where she purchased the recording device, she did remember receiving oral instructions from the sales clerk regarding its use. Ms. Owens stated that to her knowledge, no written instructions were included with the device and that the device resembled a cellular phone charger in both form and function. She further explained that the device also acted as a motion-activated video camera. She also articulated: "As far as I knew, it was a video camera. It was a phone charger. It took an SD Card. You plugged it into the wall and it was motion activated when it was plugged in so it would capture video." Ms. Owens stated that she was not aware that the device would capture audio and that generally she "was not good with tech[nology]."

According to Ms. Owens, she left the device plugged into an outlet in the kitchen of the marital residence before leaving town with the children. When she returned home from Florida, the device was gone. Mr. Owens later told her to get a paper out of his truck, and when she did, she saw the device underneath the paper and retrieved it. Ms. Owens then took the device to her divorce attorney, and they removed the SD card and looked at its contents on her attorney's computer.

Ms. Owens acknowledged that the video included some audio, but she stated that most of the audio was garbled or unintelligible. Notwithstanding, the video demonstrated that Ms. Hollis and other members of her family had been in the marital residence with Mr. Owens while Ms. Owens was away. Ms. Owens admitted that she had told Ms. Hollis's husband that she possessed video of Ms. Hollis and Mr. Owens together, but she explained that she did not say anything about audio and did not give him a copy of the recording. As a result, she was subpoenaed to testify in the Hollis divorce proceedings in October 2019. When she was questioned during that trial as to whether the device recorded audio, she said it "might" and that she "wasn't sure." She further stated that she had never watched all of the video clips and that on the ones she did watch, the audio was unintelligible.

Ms. Owens also acknowledged that she had told her mother and sister that she had proof that Mr. Owens was bringing a woman to their house based on the video, but she denied having made any disclosures regarding an audio recording. She further stated that some of her information about Mr. Owens's interactions with the Hollises also came from the Hollises' social media posts.

Ms. Owens produced the original packaging for the device, which contained no disclosure that audio would be recorded. Instead, Ms. Owens stated that the packaging only mentioned the device's capability to capture video and pictures. Ms. Owens was adamant that she had never repeated any spoken content from the video clips to anyone.

She reiterated that when she watched a sampling of them with her attorney, she was unable to "make out" the audio portions. Following the presentation of evidence and its deliberations, the jury ultimately found that Ms. Owens had not intentionally intercepted, used, or disclosed any of Plaintiffs' communications in violation of the Federal Wiretap Statute or the Tennessee Wiretap Statute.

As this Court has previously explained:

> On appeal, "our review of a jury's factual findings in a civil action is limited to determining whether any material evidence supported the verdict." *Potter v. Ford Motor Co.*, 213 S.W.3d 264, 268 (Tenn. Ct. App. 2006) (citing *In re Estate of Brindley*, No. M1999-02224-COA-R3-CV, 2002 WL 1827578, at *2 (Tenn. Ct. App. Aug. 7, 2002); Tenn. R. App. P. 13(d)). We "do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict." *Id.* at 268-69 (citing *In re Estate of Brindley*, 2002 WL 1827578, at *2; *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993)). "Where the record contains material evidence supporting the verdict, the judgment based on that verdict will not be disturbed on appeal." *Id.* at 269 (citing *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995)).

*State ex rel. Slatery v. Witherspoon Law Grp. PLLC*, 700 S.W.3d 370, 382 (Tenn. Ct. App. 2022).

We conclude that material evidence existed to support the jury's verdict in favor of Ms. Owens. Ms. Owens repeatedly stated that she was unaware that the recording device would record audio; instead, she believed that it would only record visual images. In addition, she presented the packaging for the device, which described the device as a "camera" and did not mention that it had the ability to capture audio. Ms. Owens left the device in her home on one occasion while she traveled with the parties' children, and after she returned and watched the video clips with her attorney and discovered that some audio had been captured, there is no evidence that she used the device further. Accordingly, material evidence supports the jury's determination that Ms. Owens did not intentionally intercept Plaintiffs' oral communications.

In addition, Ms. Owens testified that she was unable to discern the oral communications spoken in the audio portion of the clips she viewed from the device, and she stated that she never disclosed the contents of the oral communications to anyone. We reiterate that the "contents" of the communication refers to the "substance, purport or meaning of that communication[.]" Tenn. Code Ann. § 40-6-303 (4). Plaintiffs presented no evidence that Ms. Owens used or disclosed the substance of any oral communications

- 11 -

she may have intercepted. The evidence therefore supports the jury's determination that Ms. Owens did not intentionally use or disclose Plaintiffs' oral communications. Based on the evidence presented, we conclude that the trial court properly denied Plaintiffs' motions for directed verdict and judgment notwithstanding the verdict.

## VI. Jury Instructions

Plaintiffs also argue that the trial court's jury instructions were improper. Plaintiffs posit that during the jury charge conference, their counsel asked the trial court to include the entire text of 18 U.S.C. § 2510, including all definitions, in response to a request by Ms. Owens's counsel to include a definition of "intentional" in the portion of the instructions concerning violations of the Federal Wiretap Statute and the Tennessee Wiretap Statute. Plaintiffs contend that the trial court erred by including an improper definition of "intentional" in the charge and in failing to include all definitions from 18 U.S.C. § 2510 as agreed upon.

Our review of the transcript from the jury charge conference belies Plaintiffs' assertion that an agreement was reached to include all of the definitions from 18 U.S.C. § 2510. During the conference, Ms. Owens's attorney suggested that a definition of "intentional" should be included in the portion of the instructions explaining the requirements for finding a violation of the Federal Wiretap Statute, rather than simply including the "intentional" definition in the punitive damages instruction. Plaintiffs' attorney responded by requesting that if such definition were included in the portion of the instructions concerning the statute, all definitions from the statute should also be included. He then stated, however, that he was not sure whether doing so was advisable and that he "would probably say no."

Following some further discussion, the trial court judge stated that although he was not inclined to read the entire Federal Wiretap Statute to the jury, he would be willing to read the definition of "intentional" included in the punitive damages section when talking about violations of the wiretap statutes. Ms. Owens's counsel agreed to that resolution, and Plaintiffs' counsel did not respond or otherwise question the court's decision. Accordingly, the trial court made clear that it would not read the entire Federal Wiretap Statute to the jury during the charge conference, and Plaintiff's counsel failed to object.

We reiterate that when we are "considering whether a trial court committed prejudicial error in a jury instruction, it is our duty to review the charge in its entirety and consider it as a whole, and the instruction will not be invalidated if it 'fairly defines the legal issues involved in the case and does not mislead the jury.'" *Nye*, 347 S.W.3d at 699 (quoting *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 446 (Tenn. 1992)). Moreover, the jury's verdict will not be set aside based on an erroneous jury instruction "unless it appears that the erroneous instruction more probably than not affected the judgment of the jury." *Nye*, 347 S.W.3d at 699.

Upon thorough review of the entire jury charge, we conclude that the instructions given "fairly define[d] the legal issues involved in the case and [did] not mislead the jury." *See id.* During the portion of the jury instructions explaining what Plaintiffs had to prove to demonstrate that Ms. Owens violated the wiretap statutes, the trial court included the following statement: "A person acts intentionally when it is the person's purpose or desire to do a wrongful act or to cause the result." This statement comports with the case law governing the Federal Wiretap Statute and the Tennessee Wiretap Statute, both of which state that any interception, use, or disclosure of an oral communication must be with intent and not inadvertent. *See, e.g.*, *City of Grand Rapids, Mich.*, 818 Fed. Appx. at 390; *McDaniel*, 2010 WL 2134146, at *5. Therefore, because the jury instruction was not misleading and did not affect the judgment of the jury, we cannot set aside the verdict.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety. Costs on appeal are assessed to Plaintiffs: Lydia Hollis, John William Owens, Melanie Miller Hollis, and Natalie Hollis. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed by the trial court.


s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 13 -